UNITED STATES, Appellee,

v.

Sergeant Gordan P. ASFELD, 473–68–9696, United States Army, Appellant.

ACMR 8801120.

U.S. Army Court of Military Review.

27 April 1990.

For Appellant: Lieutenant Colonel Russell S. Estey, JAGC, Captain Jon W. Stentz, JAGC (on brief).

For Appellee: Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Maria C. Fernandez, JAGC, Captain Clay E. Donnigan, JAGC (on brief).

Before DeFORD, KANE and WERNER, Appellate Military Judges.

## OPINION OF THE COURT

KANE, Judge:

Contrary to his pleas, the appellant was convicted by a special court-martial composed of officers of violating a lawful general regulation, communicating indecent language (two specifications), obstructing justice, and soliciting adultery in violation of Articles 92 and 134 of the Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 934 (1982) [hereinafter UCMJ]. His approved sentence included a bad-conduct discharge, confinement for one month, forfeiture of $447.00 pay per month for one month, and reduction to the grade of Private E1.

On appeal, the appellant asserts several errors, including insufficiency of the evidence to support his convictions for obstructing justice and for soliciting adultery. We agree that the evidence of record is insufficient to support these convictions. However, our review of the entire record pursuant to Article 66, UCMJ, 10 U.S.C. § 866, finds that the appellant was denied a fair trial in violation of his fifth amendment right of due process.

## I

The appellant, a laboratory technician, was the evening and night shift supervisor of the medical laboratory of an Army general hospital. The prosecutrix was a medical technician who worked in the emergency room of that same facility. The two had a passing acquaintance because of their duties.

The appellant, a married man, had on occasion indicated to the prosecutrix that he and his wife had an "open relationship" and "saw" other people. The appellant had asked the prosecutrix to "go out" with him, to "have a date" with him, and to "have sex" with him. The prosecutrix took these overtures as a joke, apparently because of the tone and content of the conversation and because of disclaimers by the appellant: he would laugh and say, "I was just kidding." She testified:

> Sometimes in the Lab, when I's [sic] come up there, he'd joke around and say that he wanted to have sex with me, or something like that, and I's always kind of just laugh at him and say, "No, I'm not going to do that. You're married. What would your wife say?" [And what kind of response would you get from him?] Usually, he, you know, he wouldn't say anything, or he'd laugh, then he'd just say, you know, he was just kidding. So, I usually knew he was not serious. [And that would be the end of it?]. Yes.

Both the appellant and the prosecutrix were on duty on the night of 12 January 1988. In the early morning hours of 13 January, the emergency room telephone rang and the prosecutrix, whose duties included answering the telephone, answered in accordance with military protocol announcing "Landstuhl Emergency Room" and identifying her rank and name. The caller's statements during this call constitute indecent language and it would serve no purpose to reiterate the statements here. The prosecutrix identified the voice as that of the appellant even though the caller spoke in a "whispered voice." She responded to the call by addressing the appellant by name, by asking "... why he was doing this?" and by requesting "the Lab results." She then hung up the phone.

Approximately ten minutes later, the telephone rang again. Although a coworker told the prosecutrix to let him answer the call, she disregarded his advice, "beat" him to the phone, and answered a second call of the same nature. Again the prosecutrix identified the caller as the appellant and again the caller whispered indecencies. The prosecutrix told the caller, "[that] if he didn't stop, [she] was going to report him." She testified, "He told me 'Don't report me.'" She further testified that, "he obviously didn't believe me" because the caller persisted in his misconduct.

All calls to the emergency room are tape recorded. After the first call, the prosecutrix and other persons on duty in the emergency room reviewed the taped conversation. Although the quality of the tape recording made identification impossible,[1] the prosecutrix maintained at trial that she knew the appellant's voice well enough to identify him as the caller notwithstanding the fact that the caller was whispering.

The prosecutrix reported the incidents to her supervisor who later confronted the appellant. When confronted, the appellant evinced surprise and denied that he had made such a call. When advised that the calls had been tape recorded, the appellant stated that he had called in some laboratory results to her and that anything he had said had been said "jokingly."

Later that morning, another emergency room technician delivered some laboratory specimens to the appellant. The appellant asked him, "What's going on with that chick, [the prosecutrix]?" He also asked, "Did she take me serious?" and stated, "I was only joking." The technician told the appellant that the prosecutrix had taken

---

1. The only audible words from the first call were a whispered, "I want to fuck you." The rest of the tape was unclear because of the poor quality of the tape. The tape recording of the second call was wholly garbled and unintelligible. The record indicates that the poor quality of these tape recordings was due to the tapes that were used and not the product of the conversation itself.

the incident seriously and had reported it. He also mentioned that the calls had been recorded. At this the appellant shrugged.

From the content of these two telephone calls, the Government referred and prosecuted not only charges of communicating indecent language, but charges of sexual harassment in violation of a lawful general regulation, obstructing justice, and soliciting adultery as well.

At trial, the appellant denied making the phone calls. He admitted, however, that he had jokingly propositioned the prosecutrix on previous occasions and that he had made statements that she might have interpreted as propositions. He explained his alleged admissions to the supervisor and the other emergency room technician as apologies which were made in reference to the previous person-to-person conversations; he denied that his apologies referenced the alleged telephone conversations.

## II

As a threshold matter, we find the following infirmities in the appellant's prosecution and conviction for the offenses of violating a lawful general regulation, soliciting adultery, and obstructing justice.

## A

The specification of Charge II (violating a lawful general regulation) does not allege an offense cognizable under Article 92, UCMJ.

The appellant was charged and convicted for violating paragraph 1–4d of Army Regulation 600–50.[2] Paragraph 1–4 of Army Regulation 600–50 sets forth "General policies on proper conduct of official activities" and provides in part:

d. DA personnel will strictly adhere to the DA program of equal opportunity

regardless of race, color, religion, sex, age marital status, physical handicap, or national origin, *in accordance with AR 600–21* and CPR 713.

Army Reg. 600–50, Standards of Conduct for Department of the Army Personnel (20 November 1984) [hereinafter AR 600–50 (20 Nov.1984)], paragraph 1–4d (emphasis added). At trial, the Government introduced a two-page extract of Army Regulation 600–21 which provided in pertinent part:

Sexual harassment is an unwelcome form of sex discrimination. It is not limited to the work environment and can occur at almost any place. Sexual harassment violates acceptable standards of integrity and impartiality required of all Army personnel and interferes with mission accomplishment and unit cohesion. *Many of the acts and neglects that constitute sexual harassment are prohibited by law and punishable under civil and military law as criminal acts of a sexual nature* (para. 17, Part IV, MCM 1984), *and should be treated as such.* Army leaders at all levels are responsible for taking both preventive and appropriate corrective action to combat this inappropriate form of behavior. Any soldier or employee is engaging in sexual harassment who—

. . . . .

b. Makes deliberate or repeated verbal comments or gestures of a sexual nature that are offensive to the person to whom addressed.

Army Reg. 600–21, Equal Opportunity Program in the Army (30 April 1986) [hereinafter AR 600–21]), paragraph 2–2 (emphasis added).

■ Army Regulation 600–50 is a puni-

---

2. The Specification of Charge II alleged a violation of Article 92, UCMJ, as follows:

In that [the appellant] ... did ... violate a lawful general regulation, to wit: paragraph 1–4d, Army Regulation 600–50, dated 20 November 1984, by wrongfully engaging [the prosecutrix] in a conversation of a sexual nature and making repeated oral comments of a sexual nature that were offensive to said [prosecutrix], to wit....

The utterances alleged in this specification were duplicated in their entirety in Specification 1 of Charge I which charged the offense of communicating indecent language under Article 134, UCMJ. Although factually multiplicious for findings purposes under *United States v. Baker*, 14 M.J. 361 (C.M.A.1983), both specifications were referred to trial and the appellant was convicted of both.

tive regulation [3] which prohibits the abuse of an official, public position for purposes of personal benefit. AR 600–50, paragraph 1–1 [4]; *see generally* AR 600–50, paragraph 1–4e.[5] Army Regulation 600–50 was not promulgated as the Department of the Army's policy statement on equal opportunity or on sexual harassment; these matters are the subject of Army Regulation 600–21. The Government did not prosecute the appellant for violating any specific prohibition of Army Regulation 600–50; rather, he was prosecuted for violating a "prohibition" of Army Regulation 600–21.

Army Regulation 600–21 is not a punitive regulation. The plain language of Army Regulation 600–21 refers the reader to other sources for punitive enforcement of its provisions, none of which is Army Regulation 600–50. The language and provisions of Army Regulation 600–21 not only fail to manifest a penal nature, the reference to "civil and military law" for criminal enforcement measures contradict any suggestion that this regulation might afford a basis for prosecution under Article 92 of the Code.

The Government's prosecution was premised upon a notion of "incorporation by reference." The Government theorized that a failure to "strictly adhere" to the provisions of Army Regulation 600–21 was a violation of paragraph 1–4d of Army Regulation 600–50 and thus punishable under the punitive provisions of that regulation. Applying this interpretation, the Government charged a violation of Army Regulation 600–50 on the basis that the appellant's obscene telephone calls constituted sexual harassment under the provisions of Army Regulation 600–21. The Government's theory of prosecution is not even superficially appealing.

An aggressive reading of the provisions of Army Regulation 600–50 reveals no ambiguity of meaning. The extravagance of the Government's construction is apparent from a plain reading of the regulatory provision in issue. The punitive provision of Army Regulation 600–50 limits its application to noncompliance with the specific prohibitions of *"this regulation."* AR 600–50, paragraph 1–4f. Although the regulation sets forth a policy of "strict adherence" to "the DA program of equal opportunity," it plainly states that equal opportunity matters will be handled *"in accordance with AR 600–21."* AR 600–50, paragraph 1–4d (emphasis added). Nothing in the language of the regulation purports to render the provisions of Army Regulation 600–21 punitive. The reference to Army Regulation 600–21 does not "incorporate" Army Regulation 600–21 nor does it render the provisions of Army Regulation 600–21 punitive for purposes of prosecution under Article 92 of the Code. This is clearly a case of the Government attempting to do through the back door of Army Regulation 600–50 what it cannot do through the front door of Army Regulation 600–21. *Cf. United States v. Brown*, 11 M.J. 263, 266 (C.M.A.1981).

▮▮▮ The Government's theory of incorporation by reference ignores the canons of construction by which regulatory

---

3. Paragraph 1–4f of Regulation 600–50 provides:
 *f. Failure to comply with this regulation* may subject the offender to administrative action or punishment under the Uniform Code of Military Justice.
 AR 600–50 (emphasis added).

4. Paragraph 1–1 of Army Regulation 600–50 states:
 Purpose. This regulation prescribes standards of conduct required of all DA [Department of Army] personnel, regardless of assignment, *to avoid conflicts and the appearance of conflicts between private.interests and official duties.*
 AR 600–50, paragraph 1–1 (emphasis added).

5. Paragraph 1–4e of Army Regulation 600–50 provides:

 *e.* DA personnel will avoid any action, *whether or not specifically prohibited by this regulation,* that might result in or reasonably be expected to create the appearance of—
 (1) Using public office for private gain.
 (2) Giving preferential treatment to any person or entity.
 (3) Impeding Government efficiency or economy.
 (4) Losing independence or impartiality.
 (5) Making a Government decision outside official channels.
 (6) Affecting adversely the confidence of the public in the integrity of the Government.
 AR 600–50 (emphasis added).

provisions are interpreted to be punitive. The provisions of a regulation are interpreted "in light of the regulatory context *in which they are found* and *in view of the purpose of the regulation as a whole.*" *United States v. Johnston*, 24 M.J. 271, 273 (C.M.A.1987) (emphasis added). Stated otherwise, the punitive nature of a regulation must be "self-evident" from the "entirety" of the regulation before nonconforming conduct can be prosecuted as a violation of that regulation. *See United States v. Nardell*, 45 C.M.R. 101 (C.M.A. 1972). *Accord United States v. Blanchard*, 19 M.J. 196 (C.M.A.1985). Individual provisions setting forth "general guidelines" for the conduct of military functions are not to be interpreted as punitive in nature. *Id.* Nor are regulations which require implementation by subordinate commands or commanders. *See United States v. Scott*, 46 C.M.R. 25, 27 (C.M.A. 1972).

■ Paragraph 1–4d of Army Regulation 600–50 sets forth a general policy requiring adherence to the equal opportunity policies set forth in Army Regulation 600–21. This is no more than a policy statement and may not be the subject of a criminal charge under paragraph 1–4f.[6] Further, Army Regulation 600–21 not only fails to satisfy the requirements for a punitive regulation, this regulation on its face relies upon implementation and enforcement by local commands and commanders, *see* Army Reg. 600–21, paras. 1–4, 2–2, and does not delineate a "code of conduct for individuals"; thus, it may not be interpreted as punitive. *See United States v. Scott*, 46 C.M.R. 25, 27 (C.M.A.1972).

■ As a final note, we also add that the preemption doctrine would prohibit prosecution of the appellant's alleged misconduct even if the regulation were punitive. Criminal offenses embracing the con-

duct described as sexual harassment in Army Regulation 600–21 have already been proscribed by law.[7] When an offense is defined by the Code or by military tradition and the President has made specific provision for punishment, the preemption doctrine will generally preclude prosecution under the guise of a violation of a lawful general regulation under Article 92. *United States v. Curry*, 28 M.J. 419, 424 (C.M. A.1989); *see generally United States v. Reichenbach*, 29 M.J. 128, 136–137 (C.M.A. 1989).

The case at bar illustrates the impropriety of such prosecutions. The appellant's prosecution under Army Regulation 600–21 undercuts the burden of proof the Government was required to meet under the Article 134 offense of communicating indecent language. Army Regulation 600–21 would allow conviction on mere proof that a victim subjectively found an accused's conduct offensive; the Article 134 offense of communicating indecent language requires a more stringent standard of proof, indecency which violates community standards. *Compare* MCM, 1984, paragraph 89c (offensive to "community standards"), *with* AR 600–21, Glossary, Section II, subsection b ("offensive to the person to whom addressed"). Further, the Article 92 offense would expose an accused to a maximum punishment of a dishonorable discharge and confinement for two years for "sexual harassment" when conviction for indecent communications under Article 134 authorizes a maximum punishment of no more than a bad-conduct discharge and confinement for six months. *Compare* MCM, 1984, paragraph 16e(1), *with* MCM, 1984, paragraph 89e(2).

**B**

The evidence is insufficient to support a conviction for the offense of soliciting adultery.

---

**6.** To illustrate, the Government's impermissible construction would permit criminal conviction for the mere appearance of impropriety without regard to the existence of an *actus rea* or *mens rea*. *See* AR 600–50, para. 1–4e.

**7.** *Compare* AR 600–21, Glossary, Section II, subsection a, *with* Manual for Courts–Martial, United States, 1984, [hereinafter M.C.M.1984], Part

IV, paragraph 17c(2) (maltreatment of subordinates); *compare* AR 600–21, Glossary, Section II, subsection b, *with* MCM, 1984, Part IV, paragraph 89b (indecent language); *compare* AR 600–21, Glossary, Section II, subsection c, *with* MCM, 1984, Part IV, paragraph 63b (indecent assault).

■ The Article 134 offense of soliciting another to commit an offense requires proof beyond reasonable doubt that "the accused solicited or advised a certain person ... to commit a certain offense." MCM, 1984, paragraph 105b(1). The gravamen of the offense is the invitation to engage in criminal conduct. *See United States v. Gonzales,* 19 M.J. 951, 952 (A.F.C. M.R.1985). The Government must also prove that the accused entertained a specific intent that the offense actually be committed. *United States v. Taylor,* 23 M.J. 314 (C.M.A.1987).

Specific intent is an element most frequently established by inference: "Direct evidence of intent is rarely available ... circumstantial evidence 'as a practical matter ... is often all that exists.'" *United States v. Moya–Gomez,* 860 F.2d 706 (7th Cir.1988) (quoting *United States v. Page,* 580 F.2d 916, 920 (7th Cir.1978)). Because courts view the evidence in the light most favorable to the Government when testing for legal sufficiency, *United States v. Turner,* 25 M.J. 324 (C.M.A.1987), the Government is generally entitled to a presumption on appeal that the finder of fact resolved all issues of fact adversely to the accused and in favor of the Government and that the finder of fact drew all inferences essential to support their ultimate verdict.

Nevertheless, the reviewing court must find that any necessary inference is a logical deduction drawn from facts established on the record; conviction may not be premised upon "suspicion, surmise and speculation." *United States v. DeLutis,* 722 F.2d 902, 907 (1st Cir.1983). Like any court of law, this court is guided by common sense and its "experience with people and events in weighing the chances that the evidence correctly points to guilt against the possibility of innocent or ambiguous inference." *United States v. Redwine,* 715 F.2d 315, 319 (7th Cir.1983) (quoting *United States v. Kwitek,* 467 F.2d 1222, 1226 (7th Cir.1972), *cert. denied,* 409 U.S. 1079, 93 S.Ct. 702, 34 L.Ed.2d 668 (1972)).

■ The sole facts alleged in support of the charge in issue are the appellant's alleged statements, "I want to fuck you," and "I bet you fuck great." The Government argues:

> Appellant ... must have intended that [the prosecutrix] would understand his words to mean that he was asking her to have sex with him. Clearly, this was appellant's intent in view of the plain meaning of the words he used.

We are at a loss to identify any facts or circumstances from which the fact-finder could logically infer either a solicitation or specific intent without engaging in pure conjecture, surmise and speculation.

The Government has implicitly—and we find properly—acknowledged that the language alleged as basis for the charge constitutes a solicitation only by inference. Taken out of factual context and considered in isolation as the Government suggests, the plain meaning of the phrases "I bet you fuck great," and "I want to fuck you," are nothing more than declarations of a lustful desire. Considered in the context of a superficially anonymous and obscene telephone call, the language has no "tendency to incite lustful thought"; rather, it is simply offensive and shocking. *See* MCM, 1984, Part IV, paragraph 89c.

The Government requests this court to infer a solicitation to commit adultery from the "fact" that the appellant intended for the prosecutrix to understand these words to be an enticement to engage in sexual relations. In the same breath, the Government requests that this court infer that the appellant specifically intended to entice the prosecutrix to commit the offense of adultery from the "fact" that his words constitute a solicitation. In short, it would have this court infer a solicitation from the appellant's "intent" and infer the appellant's intent from his "solicitation." The impasse presented by these mutually dependent inferences would, in effect, constitute an impermissible conviction caused "by piling inference upon inference" without independent evidence to support either. *Direct Sales v. United States,* 319 U.S. 703, 711, 63 S.Ct. 1265, 1269, 87 L.Ed. 1674 (1943).

■ Granted, specific intent may be inferred from both the operative facts of the

offense and the manner in which the crime was committed. *See, e.g., United States v. Redmond,* 21 M.J. 319 (C.M.A.1986); *United States v. Johnson,* 17 M.J. 140 (C.M.A. 1984). In the case at bar, however, the viability of either inference presupposes the existence of the other without factual support for either. In effect, the existence of the *corpus delicti* of the solicitation offense is to be inferred from the "fact" of the appellant's specific intent. Simultaneously, the finding of specific intent is to be inferred from the *corpus delicti* of the purported offense. Such "evidence" does not satisfy the burden of proof beyond reasonable doubt. *Direct Sales Co. v. United States,* 319 U.S. 703, 711, 63 S.Ct. 1265, 1269, 87 L.Ed. 1674 (1943). *See e.g., Tipton v. Jago,* 818 F.2d 1264, 1267–1268 (6th Cir.1987); *United States v. Coleman,* 811 F.2d 804, 807–808 (3rd Cir.1987).

However, the government's case is not marred only by legal insufficiency. Evidence *introduced by the Government itself during its case-in-chief* refutes the existence of specific intent. For purposes of analysis, we will assume that a solicitation to commit adultery is implicit in the phrases alleged in support of this charge.

First, the operative facts of the alleged offense belie the existence of specific intent to solicit adulterous activity. The alleged solicitation was made in the context of a superficially anonymous, "obscene" telephone call. While words amounting to indecent language might justify an inference that the speaker intended to solicit an act of adultery by their "tendency to incite lustful thought," *see* MCM, 1984, paragraph 89c, the fact that a solicitation is uttered in the context of an obscene telephone call does not justify such an inference. As a matter of common sense, the act of whispering obscene and insulting language over a telephone is *not* calculated to procure participation in sexual activities. Such conduct is simply intended to shock and offend the recipient with vulgarity, *see* MCM, 1984, paragraph 89c, thereby harassing the recipient or gratifying the caller in some perverse way.

In the case at bar, the substance of the alleged statements did not have the mere "tendency to excite lustful thought." To the contrary, the indecencies uttered were both grossly offensive *and* shocking to moral sensitivities. *See* MCM, 1984, paragraph 89c. The fact that the call was patently offensive and shocking as well as superficially anonymous belies any inference that the appellant intended the call to effect a seduction.

Second, the Government established that the appellant had had prior conversations with the prosecutrix during which he had both overtly and surreptitiously solicited adulterous acts. With respect to these conversations, the Government elicited testimony from the prosecutrix that the prosecutrix considered the appellant's propositions as made in jest, that his tone during these conversations was joking, and that he had contemporaneously stated that he made his propositions in jest. The Government also introduced admissions by the appellant which the Government alleged were apologies and explanations for the telephone calls; the purported admissions also included statements that these calls had been placed as a prank.

The Government offered no countervailing evidence which would have placed the appellant's specific intent in issue. Thus, even assuming that the *corpus delicti* of solicitation of adultery has been established, the operative and circumstantial facts surrounding the alleged misconduct and the evidence introduced by the Government during presentation of its case in chief belied the existence of specific intent.

### C

The evidence is insufficient to support a conviction for obstructing justice.

The specification alleged that the appellant "did ... wrongfully endeavor to influence [the prosecutrix] not to report his offensive and indecent statements ... by responding to her stated intention to report his conduct by saying 'Don't report me,' or words to that effect." The appellant allegedly made this statement during the same

telephone "conversation" during which he allegedly uttered the indecent language.

▆▆▆ The military offense of obstruction of justice requires proof of (1) a wrongful act, (2) "in the case of a certain person against whom the accused had reason to believe ... that there would be criminal proceedings pending," (3) with specific intent to influence, impede or otherwise obstruct the due administration of justice. MCM, 1984, Part IV, paragraph 96b. The military offense of obstructing justice has been interpreted more broadly than its federal counterparts and there is no requirement that a proceeding be pending in fact. *See United States v. Jones*, 20 M.J. 38 (C.M.A.1985); *see, e.g., United States v. Tedder*, 24 M.J. 176, 179 (C.M.A.1987) (an obstruction during an investigation suffices); *United States v. Delaney*, 44 C.M.R. 367 (A.C.M.R.1971) (obstructionist act during the pendency of an Article 15, nonjudicial punishment, proceeding suffices). Nevertheless, the "overriding" objective of the offense of obstruction of justice remains "the protection of 'the administration of justice in the military system'" and not the protection of witnesses. *United States v. Guerrero*, 28 M.J. 223, 227 (C.M. A.1989). Thus, although the offense is referred to as "obstruction of justice," the gravamen of the offense is the corruption of the "due administration" of the processes of justice and not simply the frustration of justice in the abstract sense. In this, there exists a conflict between judicial precedent and the Manual for Courts-Martial.

In *United States v. Gray*, 28 M.J. 858 (A.C.M.R.1989), this court reviewed convictions for obstruction of justice where the accused merely told "witnesses" "not to discuss" his criminal activities with anyone. *United States v. Gray*, 28 M.J. at 860. Noting that the gravamen of the offense is the obstruction or interference with the *administration* of justice, we concluded

that the accused's pleas were improvident because no official responsible for the administration of criminal justice was aware of the accused's offenses at the time these allegedly obstructionist statements were made. *Id.* at 861. We held in that case that "there must be some allegation that an official authority *has manifested* an official act, inquiry, investigation, or other criminal proceeding with a view to possible disposition within the administration of justice of the armed forces" before an act of mere concealment could amount to an obstruction of justice. *United States v. Gray*, 28 M.J. 858, 861 (A.C.M.R.1989) (emphasis added). Gray's acts were nothing more than an attempt to forestall discovery of his crimes by those responsible for the administration of justice.

In *United States v. Guerrero*, the United States Court of Military Appeals affirmed a conviction for obstructing justice where the accused, after committing the offense of aggravated assault, told witnesses to lie to criminal investigators. *United States v. Guerrero*, 28 M.J. at 225. In *Guerrero*, the allegedly obstructionist act anticipated a criminal justice function and was intended to subvert or corrupt that function. *Guerrero* and *Gray* delimit the broadest demarcation of the offense of obstructing justice and illustrate the rule of law that "[a]n act may or may not amount to an obstruction of justice, depending upon the circumstances." *Wharton's Criminal Law*, § 592 (14th ed. 1981).

▆▆▆ *Gray* emphasizes that the mere attempt to conceal a crime without more does not amount to an obstruction of justice as the gravamen of the offense requires an act which tends to "influence, impede, or otherwise obstruct ... official action." *United States v. Gray*, 28 M.J. at 861. The mere attempt to conceal an offense without more does not establish a specific intent to subvert or corrupt the *administration* of justice.[8] *Guerrero* illustrates

---

8. This is not to say that an accused's wrongful attempt to prevent or delay the reporting of a crime to proper authorities by means of bribery, intimidation, threats, or other coercive or inducive means may not constitute a criminal offense punishable by courts-martial under the general article. Such misconduct is punishable as a violation of federal law under clause three of the general article, *see* 18 U.S.C. § 1512 (1982), and as other delicts proscribed under

an act which goes beyond a mere attempt to conceal an offense. Guerrero's conduct anticipated the actual corruption of a criminal investigation by material misrepresentations which would have misled and thus "influenced, impeded, or otherwise obstructed" a criminal investigation.

■ Nevertheless, the Manual would find the offense of obstructing justice in any wrongful act "delaying or preventing communication of information relating to a violation of any criminal statute" to criminal justice authorities. MCM, 1984, Part IV, paragraph 96c. This "definition" of the offense is taken from section 1512(b)(3) of Title 18 of the federal code[9] and goes beyond the elements of the military offense established by *Long,* reaffirmed by *Guerrero,* and set forth in the Manual itself. *United States v. Guerrero,* 28 M.J. at 227 (citing *United States v. Long,* 6 C.M.R. 60, 65 (C.M.A.1952)); MCM, 1984, Part IV, paragraph 96b(3).

The military offense of obstruction of justice has been interpreted to provide the greatest latitude of protection for the processes of military justice. *See United States v. Jones,* 20 M.J. 38 (C.M.A.1985). Nonetheless, the drafters' explanation exceeds the permissible limits of the military

offense of obstruction of justice.[10] Section 1512(b)(3) of the federal statute was enacted for the purpose of protecting witnesses and informants.[11] Thus, this statutory provision is at odds with objective of the military offense of obstruction of justice identified in *Guerrero.* Consequently, the elements of proof necessary for a conviction under section 1512(b)(3) do not conform with the military offense of obstructing justice.[12]

■ The drafters of the Manual would have this court apply the military offense of obstruction of justice in such a way as to encompass the same wrongs defined by federal statutes. Manual for Courts–Martial, United States, 1984, [hereinafter M.C.M.1984], paragraph 96 analysis at A21–103 (Change 2, 15 May 1986) (referencing 18 U.S.C. §§ 1503, 1505, 1510, 1512, and 1513 (1982 and Supp.). The Court of Military Appeals has previously ruled—in the Government's favor—that the military offense of obstruction of justice exists independent of federal statutes. *United States v. Jones,* 20 M.J. at 40. Further, the President has no power to change or modify substantive law. *Ellis v. Jacob,* 26 M.J. 90 (C.M.A.1988). Accordingly, we will adhere to the traditional elements of the offense

clauses one and two of the general article. *See* MCM, 1984, Part IV, paragraph 66 (bribery); MCM, 1984, Part IV, paragraph 110 (communicating a threat). An act of concealment may constitute the offense of misprision of a serious offense or accessory after the fact. MCM, 1984, Part IV, paragraphs 3 and 95.

9. Paragraph 96e of the Manual embraces that portion of section 1512 which prohibits any act which would "hinder, delay, or prevent the communication ... of information relating to the commission or possible commission" of a crime. *See* Manual for Courts–Martial, United States, 1984, [hereinafter M.C.M.1984], paragraph 96 analysis at A21–103 (Change 2, 15 May 1986) (referencing 18 U.S.C. §§ 1503, 1505, 1510, 1512, and 1513 (1982 and Supp.). *Compare* 18 U.S.C. § 1512(b)(3) *with* MCM, 1984, Part IV, paragraph 96c.

10. Previous decisions defining the military offense of obstructing justice would overlap some of these federal statutes. *Compare* 18 U.S.C. § 1510 ("Obstruction of criminal investigations") *with United States v. Tedder,* 24 M.J. 176, 179 (C.M.A.1987) (an obstruction during an investigation suffices). However, several of these

federal statutes are wholly at odds with the elements of the military offense of obstructing justice. *Compare* 18 U.S.C. § 1505 ("Obstruction of proceedings before departments, agencies and committees") *with* MCM, 1984, Part IV, paragraph 96b(2) ("criminal proceedings"); *compare* 18 U.S.C. § 1513 ("Retaliation against a witness, victim, or informant" for having given evidence or information) *with United States v. Guerrero,* 28 M.J. at 227 (the military offense of obstruction of justice is not intended to protect witnesses).

11. Section 1512 of Title 18 was enacted as part of the Victim and Witness Protection Act of 1982, Act Oct. 12, 1982, Pub.L. 97–291, 96 Stat. 1249, 1258.

12. To the extent that section 1512 of Title 18 sanctions conduct calculated to "influence, delay, or prevent the testimony of a person" in a criminal proceeding, 18 U.S.C. § 1512(b)(1), or to withhold testimony or destroy evidence in a criminal proceeding, 18 U.S.C. § 1512(b)(2), there is no doubt that the military offense of obstructing justice overlaps with the federal statute.

as established by case law. If the Government wishes to prosecute conduct as a violation of federal statutes, it may do so under clause three of the general article so long as such prosecution does not violate the preemption doctrine.

 In the case at bar, the conduct proven by the Government does not suffice to meet the legal requirements of the military offense of obstruction of justice. The gravamen of the military offense requires an act which tends to corrupt or subvert the administration of justice before the military offense of obstruction of justice will lie. *See United States v. Bailey,* 28 M.J. 1004, 1006 (A.C.M.R.1989); *accord United States v. Simpkins,* 22 M.J. 924, 926 (N.M. C.M.R.1986). Considered in the light most favorable to the Government, the appellant's alleged conduct was intended only to forestall or preclude discovery of his offense, an intent which does not amount to an attempt to interfere, impede or obstruct the "due administration" of military justice.

We also find that the operative facts of the case at bar are legally insufficient to establish that the allegedly obstructionist act was "wrongful." In the case at bar, the Government charged that the appellant "wrongfully endeavored to influence the prosecutrix not to report his crimes."

An accused's conduct must be wrongful before this court can affirm a conviction for this offense. MCM, 1984, Part IV, paragraph 96b(1). The list of examples of criminally obstructionist conduct set forth in the Manual includes bribery, intimidation, threats, injury, and "wrongful influence." MCM, 1984, Part IV, paragraph 96c. While this list is neither exhaustive nor exclusive, *see United States v. Bailey,* 28 M.J. 1004 (A.C.M.R.1989), the Manual nevertheless contemplates an act done without legal right or with some sinister purpose. *Cf. United States v. Jensen,* 25 M.J. 284, 288 (C.M.A.1987) (the payment of money to "drop the charges" in Korean

courts was not sinister and therefore did not constitute an obstruction of justice). The term "wrongful" in criminal law signifies an act done "in a wrong manner; unjustly; in a manner contrary to moral lay or justice." *United States v. Mance,* 26 M.J. 244, 250 (C.M.A.1988) (quoting *Masters v. United States,* 42 App.D.C. 350, 356 (1914)). *See Black's Law Dictionary* 1446 (5th ed. 1979).

The prosecutrix had no legal obligation or duty to report the obscene telephone calls. *See United States v. Kunkle,* 23 M.J. 213, 218 (C.M.A.1987) (failure to assist in law enforcement is usually not a crime); *United States v. Collier,* 48 C.M.R. 789 (C.M.A.1974) (a soldier has no general duty to report crime); *see also* MCM, 1984, Part IV, paragraph 95c(3) (the "mere failure or refusal to disclose the serious offense without some positive act of concealment" does not make one guilty of misprision of a serious offense). On its face, the allegedly obstructionist statement, "Don't report me," does not request an affirmative act by the prosecutrix which would amount to an interference with or obstruction of the due administration of justice. *Cf. United States v. Guerrero,* 28 M.J. at 225 (accused requested witnesses to lie to investigators). The evidence of record does not hint that the appellant's words were uttered in a tone of voice which promised some unlawful inducement or threatened retaliatory action. While a lawful act may in some circumstances cross the line of illegality, *see United States v. Cintolo,* 818 F.2d 980, 992 (1st Cir.1987), the appellant's act in the case at bar amounted to no more than a request that the prosecutrix do a lawful act which, had she acceded to the request, would have had no impact on the due administration of justice. Under these circumstances, the mere statement, "Don't report me," is not a wrongful act.[13] In short, the appellant's conduct was not unlawful.

### III

 This court generally presumes that the decision to refer a charge to court-

---

**13.** Even the federal statute would require proof that the accused "knowingly use[d]" "intimidation or physical force, threatene[d] or corruptly persuade[d]" the prosecutrix not to report his crime. 18 U.S.C. § 1512(b). We find none of these elements present in the appellant's utterance "Don't report me."

martial is made in good faith, *United States v. Hardin*, 7 M.J. 399, 404 (C.M.A. 1979), and will not inquire further into the decision-making process. The "probable cause standard ... is substantially less than sufficient admissible evidence to sustain a conviction," *see ABA, Standards for Criminal Justice* (1986), Standard 3–3.9 commentary; further, this prosecutorial finding of probable cause may be premised on evidence which is incompetent, inadmissible or even tainted by illegality. *Lawn v. United States*, 355 U.S. 339, 349, 78 S.Ct. 311, 317, 2 L.Ed.2d 321 (1958).[14] *See United States v. Murray*, 25 M.J. 445 (C.M.A. 1988). The standard is so slight and prosecutorial discretion so broad that there is no constitutional requirement for an independent judicial determination of probable cause in the absence of pretrial restraint. *See Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

■ However, as the case proceeds to prosecution, the Government must make a good-faith assessment of its case and withdraw any charge which it cannot substantiate by competent, legal evidence. The Government's prosecutorial duty requires that it not "permit the continued pendency of criminal charges in the absence of sufficient admissible evidence to support a conviction." *ABA, Standards for Criminal Justice* (1986), Standard 3.8(a). *Accord United States v. Phare*, 45 C.M.R. 18 (C.M. A.1972); *see also* Dep't of Army, Pam. 27–26, Rules of Professional Conduct for Lawyers, Rule 3.8(a) (December 1987). When the court finds a lack of sufficient admissible evidence to warrant prosecution, this court must consider the effect, if any, on the legality and fairness of the proceedings and findings even though the charge may have been supported by probable cause.

■ In the usual case, such a finding amounts to no more than an "abuse of discretion." *See Corbett v. Bordenkircher*, 615 F.2d 722, 726 (6th Cir.1980) (quoting

*United States v. Follette*, 364 F.2d 305 (2d Cir.1966), *cert. denied*, 385 U.S. 1016, 87 S.Ct. 733, 17 L.Ed.2d 552 (1967)). Typically, such errors are harmless or require no more remedy than dismissal of the offending findings and either a reassessment of the sentence or a remand for a sentence rehearing. *See United States v. Sales*, 22 M.J. 305 (C.M.A.1986). However, just as misjoinder and multiplicity in charging may result in a denial of due process, so may the prosecution of unwarranted charges result in a denial of due process. *See United States v. Lane*, 474 U.S. 438, 446 n. 8, 106 S.Ct. 725, 730 n. 8, 88 L.Ed.2d 814 (1986) (misjoinder); *United States v. Baker*, 14 M.J. 361, 365 (C.M.A.1983) (multiplicity).

■ The due process hazards inherent in such charging are clear: the mere allegation of a baseless charge can influence the finder of fact by suggesting that the accused is a bad character worthy of punishment. *United States v. Baker*, 14 M.J. at 365 (citing *United States v. Middleton*, 30 C.M.R. 54 (C.M.A.1960)). Likewise, it may induce cumulative consideration of the evidence of separate offenses and result in a finding of guilty which would not have resulted had the fact-finder considered the evidence separately. *See Drew v. United States*, 331 F.2d 85, 86 (D.C.Cir.1964). In short, the sheer number of accusations may influence the fact-finder. *United States v. Phare*, 45 C.M.R. 18, 22 (C.M.A. 1972)(quoting *United States v. Bird*, 30 C.M.R. 752, 755 (CGBR 1961)). In the case at bar, we find that the aggregation of legally and factually unsupportable charges has denied the appellant his fifth amendment right of due process.

■ Our analysis has established that the charge of violating a lawful general order had no legally cognizable basis. Further, the factual allegations set forth in support of that charge were duplicated within one of the specifications alleging communication of indecent language; thus, these specifications were multiplicious for

---

**14.** Thus, probable cause charging may permissibly elicit a provident plea of guilty to a charge for which the Government could not otherwise make out a *prima facie* case at trial; the inability to prove by competent evidence a charge supported by probable cause does not affect the legality or fairness of an otherwise provident guilty plea.

findings purposes. *See United States v. Holt*, 16 M.J. 393 (C.M.A.1983). Our analysis has further established that the Government proceeded to trial on the charge of solicitation to commit adultery not only with a lack of available evidence to support the charge, but with the intention to introduce evidence during its case in chief which would refute that charge. Finally, our analysis has established that there was no factual or legal basis for prosecuting the charge of obstructing justice.

It is obvious that the Government impermissibly joined the relatively minor charges of communicating indecent language with unwarranted charges of substantially greater culpability.[15] Because the members returned a finding of guilty to a charge not supported by competent evidence and another finding of guilty refuted by evidence introduced by the Government itself, we find that their deliberations were influenced by the sheer weight of accusations in the case and not by the evidence—or lack thereof—adduced at trial. Accordingly, we find that the appellant was denied a fair trial in violation of his fifth amendment right of due process.

Applying the test for constitutional error, *see United States v. Lane, supra,* we are unable to conclude beyond a reasonable doubt that the sheer weight of accusations did not influence the findings of guilty to the remaining specifications alleging communication of indecent language. The appellant entered pleas of not guilty to these charges and defended on the theory that the Government failed to prove his identity beyond reasonable doubt. This court cannot determine whether the members' findings on these specifications were properly premised upon a careful consideration of the evidence and the credibility of the witnesses on the basis of the legal standard of proof beyond reasonable doubt.

On the basis of the errors noted, the findings of guilty and the sentence are set aside. Because the appellant's convictions are the product of "prejudicial and unreasonable multiplication of charges," *United States v. Baker*, 14 M.J. 361, 365 (C.M.A. 1983), and the "continued pendency of criminal charges in the absence of sufficient admissible evidence to support a conviction," *ABA Standards for Criminal Justice* (1986), Standard 3.8(a),[16] we will apply a drastic remedy. *See United States v. Baker*, 14 M.J. at 365. The charges are dismissed.

Senior Judge DeFORD and Judge WERNER concur.

---

**15.** *Compare* MCM, 1984, paragraph 89e(2) (authorizing a maximum sentence which includes a bad-conduct discharge and six months' confinement for the offense of communicating indecent language), *with* MCM, 1984, paragraph 16e(1) (authorizing a maximum punishment which includes a dishonorable discharge and two years' confinement for the offense of disobeying a lawful general order), MCM, 1984, paragraph 96e (authorizing a maximum punishment which includes a dishonorable discharge and five years' confinement for the offense of obstructing justice), and MCM, 1984, paragraph 105e and 62e (authorizing a maximum punishment which includes a dishonorable discharge and one year confinement for the offense of soliciting adultery).

**16.** We add that the evidence of record fails to convince this court of the appellant's guilt beyond reasonable doubt.