**UNITED STATES**

v.

**Stephen L. CULBERTSON, Lieutenant Junior Grade (O–2), U.S. Navy.**

**NMCCA 200000982.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 28 Sept. 1999.

Decided 10 May 2007.

Capt Jeffrey Stephens, USMC, Appellate Defense Counsel.

Lt Tyquili Booker, JAGC, USN, Appellate Government Counsel.

Before RITTER, Senior Judge, FELTHAM, and WHITE, Appellate Military Judges.

RITTER, Senior Judge:

The appellant was tried by a general court-martial composed of officer members. Contrary to his pleas, the appellant was convicted of two specifications of violating a lawful general order, two specifications of rape, conduct unbecoming an officer and gentleman, and two specifications of obstruction of justice. His offenses violated Articles 92, 120, 133, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 920, 933, and 934. The appellant was sentenced to confinement for 5 years, total forfeitures, and a dismissal. In an act of clemency, the convening authority approved only so much of the sentence as included confinement for 5 years, a dismissal, and forfeiture of pay and allowances not to exceed $2,895.00 pay per month.

In his initial brief, the appellant contends: (1) the evidence was legally and factually insufficient to support his conviction of two obstruction of justice specifications; (2) the military judge improperly instructed the members on the obstruction of justice offenses; (3) the second specification of obstruction of justice fails to state an offense; (4) the trial counsel improperly commented on the appellant's right not to testify; and (5) the military judge should have dismissed certain language from the conduct unbecoming an officer offense as an unreasonable multiplication of charges with the rape offenses.[1] In a supplemental brief, the appellant also argues: (1) the evidence is legally and factually insufficient to support his conviction on

---

1. We note the Government failed to answer these contentions, although they filed an answer to the supplemental brief.

the two rape specifications; and (2) he was prejudiced by the post-trial delay in this case.

We have carefully examined the record of trial, the appellant's brief and supplemental brief, and the Government's answer to the supplemental brief. We conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

## Insufficient Evidence of Obstruction of Justice

The appellant contends that the evidence is legally and factually insufficient to support his conviction of two specifications of obstruction of justice. He claims the evidence failed to establish that his acts were wrongful, that he had reason to believe there were or would be criminal proceedings against him, and that the acts were done to obstruct justice. We disagree.

### Facts

On 13 March 1999, the appellant, a lieutenant junior-grade (LTJG), attended a party at which he, one fellow officer, and a large number of enlisted personnel from his ship drank excessive quantities of alcohol. After the party, the appellant spent the night at the apartment of Interior Communications Electrician Third Class (IC3) Boothe, a female petty officer from his ship. The other officer, Ensign (ENS) Brenner, and a number of junior enlisted personnel, also spent the night there.

ENS Brenner testified the appellant admitted having consensual sexual intercourse with Seaman (SN) V twice that night. SN V testified she was too drunk to remember much about that night, but recalled waking up from a drunken sleep with someone lying on top of her. She protested, saying "Where am I? Who are you? You don't even know my name and I don't know yours." The person on top of her identified himself as the appellant. SN V testified she passed out again. She awoke sometime later, as the bedroom door opened, and heard IC3 Boothe's voice saying "Oh, my God!" She felt a penis being pulled out of her vagina, and

turned to look at the door as IC3 Boothe shut it. She also saw the appellant jump to the side of the bed, and then get out of bed, saying something to the effect "This is my career" as he got dressed.

Although various witnesses noted SN V was upset after she came out of the bedroom, SN V did not tell anyone what happened until later that evening, when she informed IC3 Boothe she thought she had been raped. Various witnesses, however, were aware there had been sexual activity between the appellant and SN V as early as a few minutes after the second rape incident. In fact, IC3 Boothe testified she opened the bedroom door and saw the appellant in bed, on top of an apparently unconscious and naked SN V, and that, as soon as she opened the door, the appellant jumped off SN V and onto the bed beside her. A few minutes later, the appellant implied he had sex that night while speaking in the presence of some of the enlisted personnel still at the apartment. Responding to ENS Brenner's question asking "if he got some," the appellant said "Well, you know, there's a devil on one shoulder and an angel on the other." Then looking toward the shoulder he had indicated was occupied by a devil, the appellant said, "And you know which one I was looking at," and smiled. Record at 676.

On 20 March 1999, IC3 Boothe commented generally about the appellant's misconduct to her supervisor, Chief Interior Communications Electrician (ICC) Jewell, who reported it to his division officer, LTJG Gehres, on 21 March 1999. At some point on 21 March 1999, the appellant telephoned IC3 Boothe, and asked if she had told anyone about the incident. He also said he had been approached about it, did not "want anything to spread any further than it is [sic]," and wanted to "stop this right now." Record at 682. He asked her "Are you going to be with me? Are you going to stick with me?" *Id.* He also told IC3 Boothe, "I'm going to ask Mr. Brenner if he'll be an alibi, and I just want to stop this whole thing right here, right now." *Id.* The next day, the appellant also spoke with Damage Controlman Second Class (DC2) Mueller, and asked her to find SN V and ask her not to press charges.

### Law

The test for legal sufficiency is whether, considering the evidence in the light most favorable to the Government, any rational fact finder could have found that all the necessary elements of the offense beyond a reasonable doubt. *United States v. Turner,* 25 M.J. 324, 325 (C.M.A.1987)(citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). The test for factual sufficiency is whether, after weighing all the evidence in the record of trial and making allowances for not having personally observed the witnesses, this court is convinced of the appellant's guilt beyond a reasonable doubt. *Turner,* 25 M.J. at 325. Reasonable doubt does not, however, mean the evidence must be free of conflict. *United States v. Reed,* 51 M.J. 559, 562 (N.M.Ct.Crim.App. 1997), *aff'd,* 54 M.J. 37 (C.A.A.F.2000). A fact-finder may believe one part of a witness' testimony and disbelieve another. *United States v. Lepresti,* 52 M.J. 644, 648 (N.M.Ct. Crim.App.1999).

The elements of obstruction of justice, in violation of Article 134, UCMJ, are:

> (1) That the accused wrongfully did a certain act;

> (2) That the accused did so in the case of a certain person against whom the accused had reason to believe there were or would be criminal proceedings pending;

> (3) That the act was done with the intent to influence, impede, or otherwise obstruct the due administration of justice; and

> (4) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.), Part IV, ¶ 96b.

### Analysis

#### 1. The Appellant's Request of IC3 Boothe

Specification 1 of Charge III alleged the appellant obstructed justice by telephoning IC3 Boothe and saying "Let's stop this whole thing. I will say nothing happened and you back me up." The appellant contends the evidence presented on this charge and specification failed to show that: (1) the act was wrongful, because it was no more than an attempt to conceal his misconduct; (2) he had reason to believe there was or would be criminal proceedings pending with respect to his offenses against SN V; and (3) he acted with the intent to interfere with the due administration of justice. In contending his act was not proven wrongful, he cites *United States v. Gray,* 28 M.J. 858 (A.C.M.R.1989) and *United States v. Asfeld,* 30 M.J. 917 (A.C.M.R.1990) for the proposition that merely attempting to conceal one's misconduct by limiting other people's knowledge of the same does not constitute the offense of obstruction of justice, because it does not amount to an attempt to interfere, impede, or obstruct the due administration of justice.

In *Asfeld,* the accused asked the victim of his obscene telephone call, "Don't report me." In *Gray,* the accused asked two junior enlisted personnel with whom he had consensual sexual relationships not to tell anyone about his misconduct. In both cases, the accused's requests were made prior to anyone in authority being aware of the misconduct. The Army court in both cases concluded that the accused's actions were not wrongful in themselves, that the accused was not aware of any criminal proceeding based on his offenses, and that he, therefore, was not shown to have made the requests for the purpose of influencing or impeding the due administration of justice.

In the present case, SN V told IC3 Boothe, a person in her unit who was senior to her, of the offense. The latter informed her supervising chief petty officer, ICC Jewell. Both of these reports were made prior to the appellant's requests to IC3 Boothe and DC2 Mueller, as contained in the obstruction of justice specifications. At some point on the day of the appellant's request of IC3 Boothe, ICC Jewell informed his division officer, LTJG Gehres. Thus, as a factual matter, the evidence established the appellant's misconduct had been reported to persons in authority prior to his request of IC3 Boothe on 21 March 1999.

More importantly, the appellant's statements to IC3 Boothe clearly demonstrate he was **aware** that one or more persons in authority had been apprised of his misconduct. There was no reason to tell her he was planning to secure false alibi testimony if he did not believe a criminal proceeding was or would be pending against him. He stated he had already been approached about the incident, and his statements to IC3 Boothe clearly demonstrate he believed that, if "this thing" were not "stopped," she was likely to be asked about the allegations.

Furthermore, the appellant's statements constituted a wrongful act because they can be reasonably construed as a specific request that IC3 Boothe lie about his misconduct. For, to accede to his request to "back him up," the appellant knew she would have had to deny she had in fact seen him in bed, engaged in a sexual act with SN V. Regardless of whether she believed his actions constituted rape or fraternization with SN V, the appellant asked her to lie about his offenses if and when she was asked about them.

■ To the extent the appellant's reliance on *Gray* invokes the Army court's view that "there must be some allegation that an official authority has manifested an official act, inquiry, investigation, or other criminal proceeding with a view to possible disposition within the administration of justice of the armed forces," *Id.*, 28 M.J. at 861, we decline to follow that court's reasoning. As noted above, the elements of this offense require only that the accused acted wrongfully in the case of a certain person against whom the accused had reason to believe there were **or would be** criminal proceedings pending. There is thus no requirement for any formal official action in the case to have occurred at the time of the wrongful act. *See also United States v. Barner*, 56 M.J. 131 (C.A.A.F.2001)(accused's begging victim "not to tell" constituted obstruction of justice although victim had just reported offense to drill instructor and no official act had yet been taken).

■ We find the appellant's conduct was wrongful, because he implicitly asked IC3 Boothe to lie about an offense he knew she was aware of and had observed, in the course of an investigation he knew was or would be pending. His motive was obviously to impede that investigation, and such conduct is clearly prejudicial to good order and discipline in the armed forces.

*2. The Appellant's Request of DC2 Mueller*

■ Specification 2 of Charge III involved the appellant's request of DC2 Mueller to find SN V and ask her in effect not to press charges. The appellant cites *United States v. Kirks*, 34 M.J. 646 (A.C.M.R.1992), to argue that merely asking someone not to press charges does not constitute wrongful conduct.

In *Kirks*, the accused sexually molested the daughter of a civilian couple he had befriended in Germany. The parents discovered his misconduct and reported it to appropriate authorities. After being questioned by special agents of the Army Criminal Investigative Command, the appellant telephoned the family and begged the parents not to press charges. The Army Court of Military Review, noting the accused had not asked the parents to lie, threatened or harassed them, offered them a bribe, or committed any other unlawful conduct, held the accused's conduct was not wrongful, and could not support a conviction for obstruction of justice.

Here, the appellant did not ask a civilian victim, or a civilian parent of a victim, not to press charges. The appellant asked a junior subordinate to use her influence to effectively silence the victim of a felony offense. To the extent the appellant believed it was within the purview of SN V to decide whether or not to press charges, his attempt to counsel a subordinate on how she should advise the decision maker was based on self-serving, corrupt, and dishonest motives. Our superior court has made clear that otherwise lawful advice given with such motives may, in certain circumstances, constitute wrongful conduct in the context of obstruction of justice. *See United States v. Reeves*, 61 M.J. 108 (C.A.A.F.2005). The appellant's advice through DC2 Mueller constituted the kind of self-serving, corrupt, and dishonest advice that constitutes wrongful conduct sufficient to find obstruction of justice.

A second basis for finding the appellant's request "wrongful" is the abuse of his position as a United States naval officer. In asking DC2 Mueller to attempt to influence a subordinate victim not to press charges, he was using his position to advise both DC2 Mueller and SN V against their own interests for the sake of his personal interests. For if DC2 Mueller had in fact advised SN V not to report an offense, this would arguably have flouted the requirement of Article 1137, United States Navy Regulations (1990) for all naval members to report offenses they observe, so long as they are not incriminated by the report. Moreover, as an officer of the same command as DC2 Mueller and SN V, the appellant's request was inconsistent with his duty under Article 1131, United States Navy Regulations (1990) to act so as "to promote and safeguard the morale, the physical well-being and the general welfare" of those persons under his charge.

As shown above, the appellant understood by the time of his request to DC2 Mueller that a criminal proceeding was or would be pending in his case. His request that DC2 Mueller intervene to persuade the victim not to press charges was clearly aimed at impeding that criminal proceeding, and was clearly prejudicial to good order and discipline at his command.

We find the evidence both legally and factually sufficient to support the appellant's convictions of Specifications 1 and 2 of Charge III.

### Related Assignments of Error

In two related assignments of error, the appellant contends the military judge erred in instructing the members on the obstruction of justice specifications and that Specification 2 of Charge III failed to state an offense. We find the challenged aspect of the military judge's instruction was an accurate statement of the law. Furthermore, in context with the rest of the military judge's instructions concerning the offense of obstruction of justice, it was also a clear statement of the law. We thus find no error arising from the military judge's instruction.

And for the reasons discussed above, we have no difficulty finding that Specification 2 of Charge III states an offense. The allega-

tion is not that the appellant merely sought out his victim and asked her not to reveal his misconduct when no one else knew of the offense, as occurred in *Asfeld*. Rather, it involved the appellant using his military authority to request a subordinate to use her authority and influence to silence a subordinate victim at a time when the appellant knew a criminal proceeding was or would be ongoing.

### Other Assignments of Error

We have also considered the appellant's contentions that: (1) the military judge erred by failing to declare a mistrial after the trial counsel improperly commented on the appellant's failure to testify; (2) the military judge erred by failing to strike language from the Article 133, UCMJ, specification as an unreasonable multiplication of the charges; and (3) the evidence was legally and factually insufficient to support the two rape convictions. We find no merit in these contentions.

 Assuming the trial counsel's comment in his rebuttal argument on the merits was improper, the military judge acted decisively. He interrupted the trial counsel's argument, fashioned a curative instruction, and gave it to the members before the trial counsel was allowed to resume his argument. Record at 1614–20. Moreover, the defense did not object to the instruction. We are confident that, if error occurred, the military judge's actions cured any resulting prejudice.

We have considered the appellant's contention that the charges were unreasonably multiplied in light of the analytical framework set forth in *United States v. Quiroz*, 55 M.J. 334 (C.A.A.F.2001), and find no unreasonable multiplication of charges in this case.

 Finally, we have considered the appellant's contention that the evidence of the two rape convictions was legally and factually insufficient, and find no merit in it. We are particularly perplexed by the appellant's argument that there was "**no evidence** presented that Appellant engaged in sexual intercourse with Appellant (sic)" to support the earlier of the two rapes charged. Appellant's Supplemental Brief of 14 July 2006 at 7 (emphasis added). Regarding the first rape

incident, we find the evidence both clear and persuasive that SN V had become extremely intoxicated, and the appellant found her in the bathroom of IC3 Boothe's apartment in that state, having recently vomited in the toilet. He moved her, despite her protests, to a nearby bedroom. Then he undressed her, put her in bed, lay on top of her, and had sexual intercourse with her as she lay in a drunken stupor.

SN V testified she was too drunk to remember much or even to understand what was happening during the first rape incident. Yet she recalled she protested during this first rape incident, asking who the man lying on top of her was, and arguing they did not even know each other's names.[2] Both ENS Brenner and LTJG Gehres testified the appellant admitted to having sexual intercourse with SN V at this point in time.

Afterwards, and several hours later, SN V woke up and felt the appellant pull his penis out of her vagina. IC3 Boothe had just opened the door of the bedroom, and saw the appellant "dive" off SN V, whom he had been on top of, while in bed. IC3 Boothe testified she saw SN V lying in bed naked, and that she appeared unconscious. The appellant bragged of having sex a few minutes later, while downstairs in the apartment. He later told ENS Brenner he had sex twice that night. He also told LTJG Gehres he and SN V were about to have consensual sexual intercourse again that morning, but were interrupted. We find SN V's testimony to be highly credible and well-supported by corroborating witnesses. We likewise find the appellant's admissions, so far as they indicated intercourse was consensual or denied having sexual intercourse with SN V at all, to be totally incredible.

Considering the evidence in the light most favorable to the Government, a rational factfinder could have found all the necessary elements of the offense beyond a reasonable doubt. *Turner*, 25 M.J. at 325. We, too, are convinced beyond a reasonable doubt of the appellant's guilt regarding both rape convictions. *Id.*

---

2. SN V clearly knew the appellant and had talked with him earlier that night at the party. At this point, however, she was so drunk that she

### Post–Trial Delay

█ Finally, we have considered the appellant's contention that he was prejudiced by delay in the post-trial processing of his case. We are troubled by the nearly six and one-half years that elapsed between the trial and the redocketing of the case with this court, following a remand for a new convening authority's action in 2003. Even more troubling is the nearly three years taken to comply with our remand order. Like our superior court in *United States v. Rodriguez–Rivera*, 63 M.J. 372, 386 (C.A.A.F. 2006), we may resolve this issue by assuming error and proceeding directly to the conclusion that any error was harmless.

Assuming the delay of nearly six and one-half years to re-docket the case with this court denied the appellant his right to timely review of his appeal, we decline to afford relief. We have considered the totality of the circumstances and the types of relief that may be appropriate in this case. Because the appellant has served his full term of confinement, reduction of the confinement or confinement credits would afford him no meaningful relief. As for reduction of the adjudged forfeitures, any reduction would have no meaningful effect in light of the provisions for automatic forfeitures. *See* Art. 58b, UCMJ, 10 U.S.C. § 858b. And as did our superior court in *Rodriguez–Rivera*, we conclude that to reduce the period of confinement enough to have a significant impact upon collected forfeitures would require a dramatic reduction in the period of confinement that is unwarranted by the circumstances of this case. We conclude that to fashion relief that would be actual and meaningful in this case would be disproportionate to the possible harm generated by the delay.

We thus conclude no relief is appropriate or warranted in this case.

### Conclusion

As an administrative matter, we note that Prosecution Exhibits 6 and 7 and Defense Exhibits D and R are not attached to the record. However, we find no substantial

---

was unsure who was on top of her or what exactly was happening.

omission to the record of trial resulting from the failure to attach these exhibits.[3] Prosecution Exhibits 6 and 7 appear from the record to refer to two tapes that were never offered or admitted in evidence. Record at 512. Defense Exhibit R was neither offered nor admitted as evidence, and Defense Exhibit D, though offered, was never admitted. *Id.* at 1508–09. As none of these documents were considered by the trier of fact, we find no prejudice to the appellant from their absence in the record.

We therefore affirm the findings and the sentence, as approved by the convening authority.

Judge FELTHAM and Judge WHITE concur.

3. The correct practice is to attach all exhibits, if marked for identification. R.C.M. 913(c)(2), Discussion.