**UNITED STATES, Appellee,**

v.

**Ronald W. GUERRERO, Private First Class, U.S. Army, Appellant.**

No. 59,999.

CM 8700387.

U.S. Court of Military Appeals.

June 30, 1989.

For Appellant: *Captain Thomas A. Sieg* (argued); *Colonel John T. Edwards, Lieutenant Colonel Russell S. Estey, Major Kathleen A. VanderBoom, Captain Gregory B. Upton* (on brief); *Captain Donna L. Wilkins* and *Captain Stephen W. Bross.*

For Appellee: *Captain Patrick D. O'Hare* (argued); *Colonel Norman G. Cooper, Lieutenant Colonel Gary F. Roberson, Major Gary L. Hausken* (on brief).

---

*Opinion of the Court*

SULLIVAN, Judge:

In January and February 1987, appellant was tried by a military judge sitting alone as a general court-martial at Frankfurt, Federal Republic of Germany. Pursuant to his pleas, he was found guilty of two specifications of obstructing justice; wrongfully leaving the scene of an accident; three specifications of aggravated assault; and wrongful damage to private property, in violation of Articles 134, 128, and 109, Uniform Code of Military Justice, 10 USC §§ 934, 928, and 909, respectively. He was sentenced to a dishonorable discharge, confinement for 5 years, total forfeitures, and reduction to the lowest enlisted grade. Pursuant to a pretrial agreement, the convening authority approved only so much of the sentence as provided for a dishonorable discharge, confinement for 3 years, forfeiture of $438.00 pay per month for 3 years, and reduction to the lowest enlisted grade. The Court of Military Review affirmed the findings of guilty, with some modification, and the sentence, except for forfeiture exceeding $438.00 pay for 1 month. 25 MJ 829 (1988).

This Court granted review of the following issues:

## I

WHETHER APPELLANT'S PRETRIAL RESTRICTION FROM 7 JANUARY TO 18 FEBRUARY 1987 WAS TANTAMOUNT TO CONFINEMENT SO AS TO ENTITLE HIM TO ADMINISTRATIVE CREDIT.

## II

WHETHER THE MILITARY JUDGE ERRED BY FAILING TO FIND SPECIFICATIONS 1 AND 2 OF CHARGE I (OBSTRUCTION OF JUSTICE BY TELLING TWO INDIVIDUALS TO TESTIFY FALSELY TO INVESTIGATORS) MULTIPLICIOUS WITH EACH OTHER FOR FINDINGS.

We resolve the first granted issue in favor of the Government but hold that specifications 1 and 2 of Charge I are multiplicious for findings. *See generally United States v. Parker,* 17 USCMA 545, 38 CMR 343 (1968).

The facts necessary for resolution of the first granted issue are set forth in the opinion below. That court stated:

Pending trial for the offenses before this court, appellant was restricted to the military installation on 28 November 1986. After he had apparently breached his restriction, on 7 January 1987, he was restricted to his room, the latrine, the chapel, mess hall and other places deemed to be his place of duty as long as he was escorted by a noncommissioned officer [hereinafter NCO]. During off-duty time he could go any other place necessary provided he was escorted by an NCO. He was required "to sign in" with the CQ (Charge of Quarters) every 30 minutes until normal "lights out" for the company.

25 MJ at 830. Civilian defense counsel expressly declined to equate appellant's restriction at any time with confinement.

The facts pertinent to the second granted issue were stipulated to at trial:

On the afternoon of 27 November 1986 the accused and his wife had Thanksgiving dinner with SP4 Bradley Lehman and SP4 John C. Birch and their wives, during which he consumed a minimum of several glasses of wine and 2 beers. Between 2100 and 2300 hours 27 November 1986 the three couples, including the accused, went to a disco club where the accused consumed a minimum of 2 or 3 beers. On or about 2300 hours the three couples drove in the accused's 1977 Volkswagon Golf automobile to the Central Studio Club at 4 Wolfengasse, Friedberg, Federal Republic of Germany. On their way into the club the accused asked one of two white males standing outside the club if it "was soul or rock night." One of the white males replied "if it were soul night, there wouldn't be any white people here," or words to that effect. The accused became angry about this because SP4 Lehman's wife is black. The accused had a minimum of two mixed drinks between 2300 hours 27 November 1986 and 0100 hours 28 November 1986 while at the club. They departed the club as the club was closing. As they departed the club they encountered the same two white males they had encountered on the way in. A crowd of 40–50 people were standing outside the club.

Guerrero exchanged heated words with the two males and got into the driver's seat of his car. Birch and Lehman were still standing outside the car on the passenger side but all of their wives were in the car. One of the two white males made reference to having a knife and Birch broke a beer bottle on the street keeping the broken bottom portion in his hand. Birch's wife convinced him to drop the bottle and get into the car. He complied, sitting in the front seat by the accused.

One of the white males then kicked the front fender of the accused's car. The accused said he was "going to run the bastards down," or words to that effect and accelerated the engine for about 30 seconds with the car in neutral gear. Everyone in the car was yelling at the accused to just drive off and he could

have done so, however the accused was enraged.

The accused then put the car in drive gear and intentionally ran into the crowd, injuring SP4 David K. Mitchell, Private Douglas S. Michel, and Private Johnny R. Grant, Jr. After the accused ran his car through the crowd, the car slammed into a store front, destroying a plate glass window worth approximately $750.00. The accused then backed into a taxi cab, damaging it in the amount of approximately $500.00. The accused drove off without stopping, rendering assistance to anyone, or making his identity known. The accused was aware he had hit people with his car.

The accused drove off saying "Fuck it—Fuck them—I hope I killed the son of a bitch" or words to that effect.

*On the way from the club to the accused's house, the accused stopped the car and told the other occupants, including SP4 Lehman and SP4 Birch to lie to the Military Police and say that the car had been stolen.* The accused did this because he believed that some law enforcement official of the military, such as the Military Police or the Criminal Investigation Command would be investigating his actions. SP4 Lehman and SP4 Birch refused to lie, however, and immediately reported the incident to their chain of command and the Military Police.

After returning to his house the accused drank brandy. About 0300 hours the German Police arrested the accused at his house.

(Emphasis added.)

At trial, before the entry of pleas, defense counsel moved to have the two obstruction-of-justice specifications merged, due to the multiplicious nature of the specifications. He argued that "they arose out of a single, integrated transaction in which there was a unity of time, an incessant flow of events and a single impulse." Trial

counsel objected that pleas had not been entered yet, and therefore it was premature to argue multiplicity. Thereafter, the judge deferred issuing a ruling.

After pleas the judge did make his ruling on this motion. He stated:

As to Specifications 1 and 2 of Charge I, I find that they are—although it was done around the same time and place, however, it was done to separate people who would be witnesses against the accused, and I find that although they merge for sentencing purposes—that the government has conceded—they do not merge for findings purposes. The motion is denied in part, granted in part. It's denied for findings—to merge them is denied, but I do find, technically, that they are multiplicious for sentencing purposes and I will consider them as one for sentencing purposes.

I

■ Appellant asserted for the first time on appeal that his pretrial restriction was tantamount to confinement and, therefore, he was entitled to administrative credit for this period of custody against his sentence to confinement. *See United States v. Allen,* 17 MJ 126 (CMA 1984); *e.g., United States v. Mason,* 19 MJ 274 (CMA 1985) (summary disposition). *See generally* RCM 305(j)(2), Manual for Courts–Martial, United States, 1984. We have considered this belated claim (*see* RCM 906(b)(8)) in light of the conditions of restriction found by the Court of Military Review. *See generally United States v. Smith,* 20 MJ 528, 531–32 (ACMR 1985). We also note that defense counsel stated that "we do not claim it was tantamount to confinement." In this context, we find appellant has failed to establish that he was entitled to administrative credit for his time in restriction. *See* RCM 905(c)(2)(A); *see also United States v. Palmiter,* 20 MJ 90, 100 (CMA 1985) (Everett, C.J., concurring in the result); *cf. United States v. Hilton,* 27 MJ 323, 326 (CMA 1989).

## II

Appellant was found guilty of two specifications of obstructing justice, in violation of Article 134. *See* para. 96, Part IV, Manual, *supra.* The first specification states that appellant

> did, at Bad Nauheim, Federal Republic of Germany, on or about 28 November 1986, *wrongfully endeavor to impede an investigation by the Criminal Investigation Command* into allegations of an attempted murder by the said Private First Class Ronald W. Guerrero, when he had reason to believe there would be criminal proceedings pending, *by wrongfully telling Specialist Four John C. Birch, a material witness in the said investigation, to testify falsely* concerning the attempted murder, to wit: to say the car involved had been stolen or words to that effect.

(Emphasis added.) Specification 2 alleges that appellant

> did, at Bad Nauheim, Federal Republic of Germany, on or about 28 November 1986, *wrongfully endeavor to impede an investigation by the Criminal Investigation Command* into allegations of an attempted murder by the said Private First Class Ronald W. Guerrero, when he had reason to believe there would be criminal proceedings pending, *by wrongfully telling Specialist Four Bradley M. Lehman, a material witness in the said investigation, to testify falsely* concerning the attempted murder, to wit: to say the car involved had been stolen or words to that effect.

(Emphasis added.) The evidence of record shows that both these charges resulted from a single act of communication at the same time and place to both potential witnesses by appellant.

The particular question in this case is whether appellant's act of simultaneously soliciting false testimony from two potential witnesses constituted one or more violations of a single provision of military law prohibiting obstruction of justice. *See*

United States v. Parker, supra. In *United States v. Baker*, 14 MJ 361, 367 (CMA 1983), this Court addressed a similar, but nonetheless distinct, question whether a single episode of aggressive behavior by an accused constituted one or more violations of different criminal statutes. *See United States v. Flynn*, 28 MJ 218 (CMA 1989). In both situations, the critical factor in determining the proper number of convictions is the intent of Congress. *United States v. Parker*, 17 USCMA at 546, 38 CMR at 344; *United States v. Alexander*, 471 F.2d 923, 932 (D.C.Cir.), *cert. denied*, 409 U.S. 1044, 93 S.Ct. 541, 34 L.Ed.2d 494 (1972). *See United States v. Timberlake*, 18 MJ 371, 374 (CMA 1984). In both situations, the same problem arises—namely, how one determines Congress' intent. *United States v. Baker, supra.*[1]

Legislative intent may be revealed in different ways depending on the statute or statutes involved. *See Garrett v. United States*, 471 U.S. 773, 778–79, 105 S.Ct. 2407, 2411–12, 85 L.Ed.2d 764 (1985); *United States v. Zubko*, 18 MJ 378, 382–83 (CMA 1984). In this regard, we note that Congress is quite capable of indicating on the face of a statute the intended unit of prosecution by particularly delineating the object of its protection in enacting that statute. *See United States v. Woodward*, 469 U.S. 105, 105 S.Ct. 611, 83 L.Ed.2d 518 (1985); *cf. United States v. Alexander, supra* at 931 n.8. For example, the various federal civilian statutes covering obstruction of justice designate for protection particular persons (18 USC §§ 1501, 1502, 1503, 1504, 1512, 1513, 1514); particular things (18 USC §§ 1506 and 1509); particular proceedings (18 USC §§ 1505, 1508, 1510, 1511, 1516); and the general process of justice itself (18 USC §§ 1503 and 1507).

Article 134 does not expressly delineate all the elements of obstruction of justice. *See generally Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). *See United States v. Zubko, supra* at 381–82. However, the elements of this offense as generally recognized in military law are

---

1. We note, as earlier stated in *United States v. Baker*, 14 MJ 361, 367 n.4 (CMA 1983), that the test for lesser-included offenses does not resolve all multiplicity-for-findings questions.

explained in paragraph 96(b), Part IV, Manual, *supra*. *See United States v. Jones*, 20 MJ 38 (CMA 1985); *United States v. Long*, 2 USCMA 60, 65, 6 CMR 60, 65 (1952). Paragraph 96 states:

b. *Elements.*

(1) That the accused wrongfully did a certain act;

(2) That the accused did so in the case of a certain person against whom the accused had reason to believe there were or would be criminal proceedings pending;

(3) That the act was done with the intent to influence, impede, or otherwise obstruct *the due administration of justice;* and

(4) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

(Emphasis added). Our case law clearly indicates the overriding concern of this provision of military law is the protection of "the administration of justice in the military system." 2 USCMA at 65, 6 CMR at 65.

In view of the above, the particular purpose of the military obstruction-of-justice prohibition is not the protection of individual witnesses or potential witnesses at courts-martial or other military investigations. *See also United States v. Lester*, 749 F.2d 1288, 1295 (9th Cir.1984); *cf. United States v. Cuesta*, 597 F.2d 903, 918 (5th Cir.), *cert. denied*, 444 U.S. 964, 100 S.Ct. 451, 62 L.Ed.2d 377 (1979). Accordingly, we reject the suggestion of the Government that the number of witnesses embraced in a single request for false testimony established the appropriate units of

2. The military judge treated these two specifications as multiplicious for sentence. According-

prosecution for this particular military offense. *See United States v. Alexander*, *supra* at 933–34; *Horton v. United States*, 541 A. 2d 604, 612 n.10 (D.C. App.1988). Applying the Supreme–Court–approved rule of lenity, we find Congress intended a single offense to exist on these facts. *United States v. Parker*, 17 USCMA at 547, 38 CMR at 345. *See generally Ladner v. United States*, 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958); *Ogletree v. State*, 525 So.2d 967, 969 (Fla.App.1988).

## DECISION

Specifications 1 and 2 of Charge I [2] are consolidated as specification 1 as follows:

In that Private First Class Ronald W. Guerrero, U.S. Army, A Company, 1st Battalion, 36th Infantry, did, at Bad Nauheim, Federal Republic of Germany, on or about 28 November 1986, wrongfully endeavor to impede an investigation by the Criminal Investigation Command into allegations of an attempted murder by the said Private First Class Ronald W. Guerrero, when he had reason to believe there would be criminal proceedings pending, by wrongfully telling Specialist Four John C. Birch and Specialist Four Bradley M. Lehman, material witnesses in the said investigation, to testify falsely concerning the attempted murder, to wit: to say the car involved had been stolen or words to that effect.

The decision of the United States Army Court of Military Review as to specifications 1 (consolidated), 3–6 of Charge I and specification 2 of Charge II, and the sentence is affirmed.

Chief Judge EVERETT and Judge COX concur.

ly, no sentence relief is required.