**UNITED STATES**

v.

**Airman First Class John A. ALBRECHT, FR018–64–1335 United States Air Force.**

**ACM 29749.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 13 Nov. 1991.

Decided 18 Nov. 1993.

**628**

Appellate Counsel for the Appellant: Major Alice M. Kottmyer, Major Mary C. Yastishock, and Major Marc A. Fox.

Appellate Counsel for the United States: Lieutenant Colonel Brenda J. Hollis, Major Paul H. Blackwell, Jr., and Captain David C. Wesley.

Before DIXON, GRUNICK, and PEARSON, Appellate Military Judges.

## OPINION OF THE COURT

**PEARSON, Judge:**

A general court-martial composed of a military judge sitting alone convicted Airman First Class Albrecht, in accordance with his pleas, of stealing personal checks from two other Air Force members, falsely making the checks out to himself for a total of $480, and uttering the checks to a credit union for cash, in violation of Articles 121 and 123, Uniform Code of Military Justice (UCMJ). The court sentenced him to a bad conduct discharge, confinement for 8 months, and reduction to E–1, which the convening authority approved as adjudged.

On appeal, Airman Albrecht asserts his plea of guilty to stealing checks was improvident, the specifications alleging the false making of the checks were multiplicious for findings with the specifications alleging their false uttering, and the sentence is too severe. We determine otherwise and affirm.

### FACTS

Airman Albrecht, a 21–year–old C–130 crew chief, stole six checks from two co-workers who were deployed to OPERATION DESERT SHIELD/STORM. The co-workers left the checks behind pre-signed so someone else could pay their bills in their absence. Airman Albrecht filled the checks out in various amounts with his name as payee and cashed them on different days at the base credit union. He repaid the co-workers upon their return from deployment.

### PROVIDENCY OF PLEA

In an unsworn statement during sentencing, Airman Albrecht said he intended to repay his victims when "he took the money." He now claims this statement of an intent to repay was inconsistent with a larceny; consequently, his plea of guilty to stealing checks was improvident.

■ At first blush, Airman Albrecht's argument appears to have some merit. He took the checks with the intent to complete and cash them, and once he completed the checks, they became negotiable instruments. *See United States v. Banfield*, 37 M.J. 325 (C.M.A.1993); *United States v. Stewart*, 1 M.J. 750 (A.F.C.M.R.1975). One who wrongfully takes a negotiable instrument having no value above its face value with the intent to return an equivalent amount of money is not guilty of stealing the instrument's face value. Instead, the offender is guilty only of wrongfully appro-

priating the face value. MCM, Part IV, paragraph 46c(1)(f)(iii)(B) (1984); *United States v. Epperson*, 10 U.S.C.M.A. 582, 28 C.M.R. 148 (1959). This principle makes sense: offenders who take checks and other negotiable instruments representing cash should be no worse off under the law of larceny than if they had taken the cash.

■ However, Airman Albrecht was not charged with stealing completed negotiable instruments. Instead, he was charged with stealing the pieces of paper themselves. He admitted he intended to permanently deprive the victims of the use and benefit of these pieces of paper as he "intended to ·use them to write values to them." As pieces of paper, the checks had nominal value and were proper subjects of larceny. *United States v. Frost*, 22 U.S.C.M.A. 233, 46 C.M.R. 233 (1973); *United States v. Windham*, 15 U.S.C.M.A. 523, 36 C.M.R. 21 (1965). Consequently, Airman Albrecht's plea of guilty to larceny was provident. *United States v. Clark*, 28 M.J. 401 (C.M.A.1989).

## MULTIPLICITY

Airman Albrecht was charged in separate but identical specifications with uttering the same checks that he falsely made. During the plea inquiry, he said he uttered each check on the same day he falsely made it. On motion of the defense, the military judge found the making and uttering offenses were multiplicious, that is but one offense, for sentencing purposes. *See* R.C.M. 1003(c)(1)(C).

■ On appeal, Airman Albrecht asserts the offenses were multiplicious for findings too, an issue he did not raise at trial. Our court has been reluctant to hold an appellant's feet to the waiver fire on multiplicity issues when the topic was never even broached at trial. *See, e.g., United States v. Warner*, 33 M.J. 522 (A.F.C.M.R.1991); *United States v. McCoy*, 32 M.J. 906 (A.F.C.M.R.1991), *pet. denied*, 33 M.J. 489 (C.M.A.1991). We will not foreclose appellate review in this case where defense counsel at least raised the issue in some form.

For a number of years, the multiplicity issue was a quagmire that snared a number of trial and appellate. military judges. Struggling with a series of judicially produced yardsticks, judges measured whether the government had treated an accused unfairly for findings or sentencing by taking one act or course of conduct and multiplying it into several criminal charges. Courts often reached different, but logically correct, results when measuring the same set of facts and offenses. *See, e.g., United States v. Jobes*, 20 M.J. 506 (A.F.C.M.R.1985) (multiplicity for sentencing), *pet. denied*, 21 M.J. 102 (1985).

■ Recently, the Court of Military Appeals discarded several of these old multiplicity yardsticks. In *United States v. Teters*, 37 M.J. 370 (C.M.A.1993), the Court of Military Appeals adopted basically one measurement for determining findings multiplicity when the same act or course of conduct is charged under more than one statute: the elements test of *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Under *Teters*, an accused may be convicted of multiple statutory violations for the same act or course of conduct where each offense requires proof of an element not included in the other and Congress has not expressed a contrary legislative intent.

Here, Airman Albrecht was not convicted of separate violations of different statutes. Instead, he was convicted of two separate offenses made criminal by the same statute. However, we should still apply *Teters'* rationale and look at the elements and legislative intent in resolving the findings multiplicity issue. *See Prince v. United States*, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957); *Albrecht v. United States*, 273 U.S. 1, 47 S.Ct. 250, 71 L.Ed. 505 (1927); *United States v. Guerrero*, 28 M.J. 223 (C.M.A.1989).

■ Congress may lawfully punish the various steps a criminal takes in achieving a particular nefarious goal, as well as the goal itself. *Albrecht v. United States, supra; Morgan v. Devine*, 237 U.S. 632, 35 S.Ct. 712, 59 L.Ed. 1153 (1915). Under

Article 123, UCMJ, Congress specified that one commits "forgery" of a check by either falsely making the check or uttering it knowing of its falsity. While the ultimate goal of the criminal may be to obtain money or something else of value, one may falsely make a check without cashing it *or* cash a false check without falsely making it. The offenses contain different elements and one is not a lesser included offense of the other. Moreover, at common law, the offenses were separately punishable crimes, and there is absolutely no evidence that Congress intended to change that principle when enacting Article 123. *United States v. Gibbons,* 11 U.S.C.M.A. 246, 29 C.M.R. 62 (1960); *United States v. Mireles,* 17 M.J. 781 (A.F.C.M.R.1983); *United States v. Murkey,* 25 C.M.R. 784 (A.F.C.M.R.1957), *pet. denied,* 25 C.M.R. 486 (1958). *See also United States v. Richardson,* 582 F.2d 968 (5th Cir.1978) (separate convictions affirmed for forging and uttering check under 18 U.S.C. 495); *Shields v. United States,* 310 F.2d 708 (6th Cir.1962) (same), *cert. denied,* 374 U.S. 837, 83 S.Ct. 1888, 10 L.Ed.2d 1058 (1963); *Marshall v. United States,* 299 F.2d 141 (10th Cir.1962) (same), *cert. denied,* 370 U.S. 958, 82 S.Ct. 1606, 8 L.Ed.2d 824 (1962); *United States v. Huggins,* 184 F.2d 866 (7th Cir. 1950) (same).

Additionally, we view the purpose of Article 123, UCMJ, is to protect the integrity of checks and other negotiable instruments at every step in the process from their creation until their final use. In defining the appropriate units of prosecution for forgery, we should not detract from that purpose. *See United States v. Guerrero, supra.*

■ Consequently, we hold that the offense of forging a check by falsely making it is not multiplicious for findings with the offense of forging the same check by uttering it even when they occur at the same time and place. *But see United States v. Holliday,* 24 M.J. 686 (A.C.M.R.1987) (relying on the old yardstick of *United States v. Baker,* 14 M.J. 361 (C.M.A.1983) overruled in *United States v. Teters, supra* ), *pet. denied,* 26 M.J. 166 (1988); *United States*

*v. Lauderdale,* 19 M.J. 582 (N.M.C.M.R. 1984) (also relying on *United States v. Baker, supra).*

## SENTENCE APPROPRIATENESS

Finally, Airman Albrecht asserts we should disapprove his bad conduct discharge and reduce his confinement because he has a good military record and "obvious" rehabilitation potential, he committed the offenses in the midst of severe personal and financial crises, and he repaid the victims.

■ Under Article 66(c), UCMJ, our statutory mandate is to determine sentence appropriateness, not grant clemency. In arriving at an appropriate sentence, we seek to do justice rather than bestow mercy. Mercy is best left for those who Congress gave the statutory power of clemency. *United States v. Baker,* 29 M.J. 126 (C.M.A.1989); *United States v. Healy,* 26 M.J. 394 (C.M.A.1988).

■ Airman Albrecht squandered what may have been a promising military career. However, he did more. By stealing checks from co-workers deployed in support of the national defense and forging them, he struck at the very jugular of good order and discipline and morale. Those who put their lives on the line in far away places should not have to doubt even for a moment that they may trust their fellow unit members with either their lives or their property. Taking into consideration all the matters contained in the record and the arguments raised by appellate defense counsel, we find the sentence is not inappropriate for the accused and the offenses. *United States v. Healy, supra; United States v. Snelling,* 14 M.J. 267 (C.M.A. 1982).

## CONCLUSION

The findings and sentence are correct in law and fact, the sentence is not inappropriate, and no error prejudicial to the substan-

tial rights of appellant occurred. Accordingly, the findings and sentence are

AFFIRMED.

Judge GRUNICK concurs.

DIXON, Chief Judge (concurring in part and dissenting in part):

I write separately only to express my disagreement with the majority's conclusion that the specifications of forging checks by a false making are not multiplicious for findings with the specifications of forging the same checks by uttering them even when they occur at the same time and place. I can find no basis for holding that Congress intended to create two separate offenses when it established Article 123, UCMJ.

As the United States Court of Military Appeals recognized in *United States v. Teters*, 37 M.J. 370 (C.M.A.1993), the multiplicity question is one of Double Jeopardy and here it asks whether Congress intended appellant at a single court-martial to be convicted of both forgery by uttering and forgery by false making of the same checks. Just as in *Teters*, the trial judge held the two specifications in question were multiplicious for sentencing. Consequently, this appellant suffers no double punishment. However, what yardstick do we apply in future cases to determine whether double punishment is permissible in this circumstance? Does this decision mean that a military member can be prosecuted at a court-martial for forgery by uttering a check known to be false and subsequently prosecuted at a different court-martial for forgery by a false making if the government learns after the first trial that the member falsely made the check?

The Fifth Amendment guarantee against double jeopardy consists of three separate constitutional protections. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). It protects against a second prosecution for the same offense after acquittal. *Ball v. United States*, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). It protects against a second prosecution for the same offense

after conviction. *In re Nielsen*, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889). And it protects against multiple punishments for the same offense. *Ex parte Lange*, 85 U.S. (18 Wall) 163, 21 L.Ed. 872 (1873).

At long last, the United States Court of Military Appeals has eliminated much of the confusion which has existed in the military justice system concerning how we determine whether separate offenses exist for purposes of conviction and punishment. In *Teters*, our highest military appellate court recognizes the constitutional power of Congress to define Federal military offenses and prescribe their punishments. Abandoning prior precedent, it adopts the intent of Congress as the controlling factor for determining whether a military accused may receive multiple convictions and punishments for the same act or course of conduct. When separate statutes are involved, *Teters* notes that the Supreme Court uses the rule of construction found in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) to discern congressional intent.

> The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

We start with the assumption that Congress does not intend to punish the same offense under two different statutes. *Whalen v. United States*, 445 U.S. 684, 691, 100 S.Ct. 1432, 1437, 63 L.Ed.2d 715 (1980). The *Blockburger* Rule enables us to determine when there are two offenses in that situation. However, when only one statute is involved, there is no assumption that more than one offense is being created. Appellate courts are left to determine the intent of Congress by examining the societal interest the statute seeks to protect. When it is clear that Congress intends to create more than one offense (i.e. protect more than one societal interest) within a single statute, courts should permit separate convictions and separate pun-

ishment. If the intent is not clear, courts should resolve any doubts in favor of lenity. *Crandon v. United States*, 494 U.S. 152, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990); *Liparota v. United States*, 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985).

A military member who falsely makes a check with intent to defraud commits forgery under Article 123, UCMJ. Similarly, one who utters a check knowing it to be false also commits forgery. That does not mean one who falsely makes and utters a check with intent to defraud commits two separate offenses. It does not necessarily follow that because an offense can be committed in two ways, that there are two separate offenses. Again it is the intent of Congress that must control. There are three elements common to both aspects of forgery. MCM, Part IV, paragraph 48c(1) (1984). The three are: (1) a writing falsely made or altered, (2) an apparent capability of the writing as falsely made or altered to impose a legal liability on another or to change another's legal rights or liabilities to that person's prejudice; and (3) an intent to defraud. The societal interest being protected by Article 123, UCMJ, is the alteration of legal rights and liabilities through false documents. There is no reason to punish one who falsely makes and utters a check more severely than one who merely utters a check knowing it to be falsely made. Each violates the societal interest being protected to the very same degree. Absent a clear expression of Congressional intent to treat the false making and uttering as separate offenses, the appellate courts should not do so. Judge Ferguson correctly observed in his dissent in *United States v. Gibbons, supra:*

> It is clear to me that the quoted statute [Article 123, UCMJ], on its face, abolishes the normal distinction between the common-law crimes of forgery and uttering and provides only for the punishment of one offense which may be committed in two ways.

I would hold the specifications of forgery by false making multiplicious with the specifications of forgery by uttering the exact same checks. I would merge the separate convictions of forgery involving the same check into specifications alleging both the false making and the uttering.