*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
HACKEL, KIRKBY, and GROSS
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Douglas B. MOSLEY**
Staff Sergeant (E-6), U.S. Marine Corps
*Appellant*

**No. 202200178**

_____

Decided: 21 December 2023

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Glen Hines (Arraignment and Plea)
Nick Henry (Motions)

Sentence adjudged 18 May 2022 by a general court-martial convened at Camp Lejeune, North Carolina, consisting of a military judge sitting alone. Sentence approved by the convening authority: confinement for 30 months, reduction to E-1, forfeiture of all pay and allowances and a bad-conduct discharge.

For Appellant:
*Captain Kimberly D. Hinson, JAGC, USN*

For Appellee:
*Major Mary Claire Finnen, USMC*
*Lieutenant Rachel Noveroske, JAGC, USN*

———————————————

**This opinion does not serve as binding precedent under
NMCCA Rule of Appellate Procedure 30.2(a).**

———————————————

KIRKBY, Judge:

A military judge sitting alone as a general court-martial convicted Appellant pursuant to his pleas. Appellant pleaded guilty to seven specifications of wrongful possession and distribution of controlled substances in violation of Article 112a, Uniform Code of Military Justice [UCMJ].[1]

Appellant asserts three assignments of error [AOE] which we reorder as follows: (1) the adjudged sentence is inappropriately severe; (2) Appellant was subjected to pretrial restriction tantamount to confinement and is entitled to day-for-day credit against his sentence to confinement, and; (3) Appellant was denied effective assistance of counsel because his attorneys neither filed a written motion nor presented evidence of restriction tantamount to confinement. We find no prejudicial error and affirm.

## I. BACKGROUND

In 2021, Naval Criminal Investigative Service [NCIS] agents initiated an investigation into allegations that Appellant wrongfully possessed and distributed controlled substances. Over the course of the investigation, NCIS agents conducted three controlled buys of drugs from Appellant. On 1 September 2021, immediately following the third purchase, NCIS agents detained Appellant and his command placed him into pretrial confinement onboard Camp Lejeune. Two days later, Appellant's command turned him over to civilian authorities pursuant to an arrest warrant for possession of cocaine and opiates. Appellant was thereafter detained at the Onslow County jail under civilian control until 13 December 2021 when he was returned to military control. Appellant's command then placed him on pretrial restriction from 13 December 2021 until 18 May 2022, the date of his court-martial. This 156-day period forms the basis for Appellant's second and third AOEs.

---

[1] 10 U.S.C. § 912a.

On appeal, Appellant claims that he "spent five months in [his] barracks room virtually 24/7," that "[he] was not assigned any work," and that [he] was not allowed to have contact with anyone except the OOD or [his] chain of command.[2] Appellant's Commanding Officer set the following conditions of restriction:

> a. Restriction is on weekdays, weekends and holidays. You are required to maintain a squared-away uniform, and a fresh shave at all times. The OOD will conduct an inspection on you during check in. At no time will you be in civilian attire while on restriction.

> b. You are restricted to Building FC 550, room number 103.

> c. The Officer of the Day (OOD) is to know your whereabouts at all times. You should be in one of four locations; at the Battalion headquarters for check-in, laundry room, designated sleeping quarters, or smoking area. This does not allow you to be in another Marine's or Sailor's room.

> d. You will sign in with the OOD (BLDG FC520G) in the proper uniform as indicated by the times on your restriction papers. Failure to sign in at designated times will be considered a violation of Article 92, Uniform Code of Military Justice (UCMJ).

> e. You will obtain permission from OOD to attend church services on base, to go to the nearest PX (for health and comfort items only), to conduct physical training on weekends (for not more than one hour each day), and to go to the nearest mess hall. All meals while on restriction will be in the mess hall only. You will be escorted by the OOD when going to the nearest PX. During physical training, you will wear either Marine Corps PT gear (green on green) or boots and utes.

> f. Alcohol consumption or possession while on restriction is prohibited.

> g. Sign-in with the OOD ends at 2145. This does not mean restriction is over for the night. After 2145 you are authorized to be in your designated living quarters only. Failure to comply will be considered a violation of Article 134 and 92 of the UCMJ.

---

[2] Appellant Mot. to Attach, App'x B.

h. You are not allowed to drive a privately owned vehicle (POV). You are allowed to be a passenger in a POV only when authorized by your chain of command. You will not rely on rides to get to any restriction musters. You will walk to all restriction musters. You will not be allowed to drive your POV until you complete your restriction.

i. If your section secures from work early, you are still restricted to building 550, room 103, and all above rules apply.

j. You will not have visitors in your room. All visitation will be conducted in the barracks lounges in accordance with the BEQ order. Visitation will be done on Sundays only from 1530-1730. Visitors will be limited to family members only.

k. If you cannot make sign-in due to operational commitment then your Officer in Charge (OIC) or Staff Noncommissioned Officer in Charge (SNCOIC) will call the OOD prior to check-in.

l. If released from civilian custody, you are directed to immediately notify your OIC or SNCOIC.[3]

The military judge held three Article 39(a) sessions over the course of Appellant's court-martial. The first session consisted of an arraignment on 15 December 2021. The Defense raised no allegations of restriction tantamount to confinement. At the 10 January 2022 session, the parties discussed progress with discovery issues, but again the Defense raised no motions concerning the conditions of Appellant's restriction.

At the 18 May 2022 session, Appellant entered his pleas of guilty and the military judge entered findings of guilty and announced the sentence. Immediately after announcing his findings, the military judge ordered 105 days of credit for time Appellant spent in pretrial confinement.[4] The Defense then attempted to argue for 155 days of confinement credit in accordance with *United States v. Mason*, stating that the time Appellant spent in restriction was tantamount to confinement.[5] However, trial defense counsel offered no evidence in support of this position, only arguing, "at the end of the case, it would be

---

[3] Appellant's Mot. to Attach, App'x A.

[4] R. at 21, 79.

[5] R. at 79-80; *United States v. Mason*, 19 M.J. 274 (C.M.A. 1985) (summary disposition).

more—the military judge will be able to see it. But I think that I was just putting on the record now for your consideration."[6] The military judge noted that Block 8 of the charge sheet indicated Appellant served specified periods of confinement and restriction. With respect to the period of restriction, beginning on 13 December 2021 and ending on the current date, the military judge stated:

> the Court will obviously consider that as a matter in mitigation and permit you to argue it. But I'm going to—I'm not going to— I'm not going [to] award any credit for any of that period at this time. For any of that period being tantamount to confinement such that there would be additional confinement credit awarded at this time. But if you want to raise it after presentencing evidence has been presented, I'll invite you to—to renew your motion at that time.[7]

The military judge invited trial defense counsel to present evidence in favor of Appellant's motion for *Mason* credit following the presentencing hearing.[8] After failing to do so, the military judge queried whether Appellant had any additional evidence, to which trial defense counsel responded, "no."[9] It is clear that the military judge sought to understand whether Appellant was entitled to credit and "explicitly invited Appellant" to put on evidence. Trial defense counsel declined to do so.

At his court-martial, Appellant took the unusual step of entering pleas of guilty to all seven specifications of the sole Charge without the benefit of a plea agreement. As a result, Appellant was fully exposed to the maximum sentence in sentencing, which included a dishonorable discharge, total forfeitures, reduction to paygrade E-1, confinement for 65 years, and any other lawful punishment. In his unsworn statement, Appellant indicated that the convening authority refused to accept a plea agreement that would include a sentence of less than a dishonorable discharge and confinement for five

---

[6] R. at 80.

[7] R. at 80-81.

[8] *Id.*

[9] R. at 157.

years.[10] The military judge sentenced Appellant to reduction to E-1, total forfeitures, a bad-conduct discharge, and confinement for 30 months.[11]

## II. DISCUSSION

## A. Appellant's Adjudged Sentenced was not Inappropriately Severe

### 1. Standard of Review and the Law

The Uniform Code of Military Justice obligates a court of criminal appeals to evaluate an appellant's sentence independently for appropriateness.[12] The court reviews sentence appropriateness de novo.[13] Sentence appropriateness involves the judicial function of assuring that justice is done and that an accused gets the punishment he deserves.[14] Our review requires individualized consideration of the particular accused based on the nature and seriousness of the offense and the character of the offender.[15] In making this assessment, we analyze the record as a whole.[16] Notwithstanding this Court's significant discretion to determine appropriateness, we may not engage in acts of clemency, which is the prerogative of the convening authority.[17]

### 2. Analysis

Appellant argues that a sentence of 30 months of confinement and a bad-conduct discharge was disproportionate to the offenses to which he pleaded guilty. A number of factors inform us that this argument is without merit: (1) the maximum punitive exposure for the offenses to which the Appellant pleaded guilty included 65 years confinement and a dishonorable discharge;[18]

---

[10] R. at 154.

[11] The military judge imposed the following sentence of confinement for each specification, all periods of which were to run concurrently: specification 1: 12 months; specification 2: 21 months; specification 3: 30 months; specification 4: 90 days; specification 5: 90 days; specification 6: 90 days; specification 7: 180 days. R. at 169.

[12] Article 66, UCMJ; 10 U.S.C. § 866.

[13] *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006).

[14] *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988).

[15] *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982).

[16] *See Healy*, 26 M.J. at 395.

[17] *Id.* at 396.

[18] R. at 74.

(2) the initial plea agreement apparently offered by the convening authority and rejected by Appellant was for five years of confinement;[19] (3) the Government at trial argued for confinement of 3 years; and (4) our own view of the sentence as being correct in law and fact, based on the entire record.[20]

The trial defense team's strategic decisions in this case, straddling the concepts of sentence appropriateness (AOE 1) and ineffective assistance of counsel (AOE 3), are relevant and warrant discussion at this point.

Appellant and his trial defense team took several unusual and potentially perilous courses of action in this case, not least of which was pleading guilty to all charges without the benefit of a plea agreement.[21] Despite being unusual and potentially perilous, none of these decisions were unreasonable. Rather they appear to have been calculated, strategic and, indeed, successful. One measure to evaluate whether counsel's performance was deficient is, logically, to consider the end result for Appellant and the totality of the record.

Trial defense counsel presented a comprehensive strategy that resulted in an adjudged sentence of confinement that was 750 months below the maximum possible. The adjudged sentence also beat the confinement term apparently offered by the convening authority by half—30 months less than the apparent offer. And the military judge's sentence was six months less than what the Government asked for at trial; therefore, it is not difficult to recognize the awarded sentence as just, if not favorable, to Appellant for the crimes to which he pleaded guilty.

In assessing the appropriateness of Appellant's sentence, we examine the robust sentencing evidence that includes service record documents, letters of support, a letter regarding Appellant's assistance with a civilian murder case,[22] and medical records indicating that Appellant had persistent "mod-severe right sided lumbosacral pain" as the result of an injury.[23] However, we find that the seriousness of the underlying offenses is not sufficiently mitigated by other matters to call into question the adjudged sentence. Not only was Appellant found guilty of wrongfully possessing four different controlled substances, but he also distributed over 30 grams of cocaine in the parking lot of

---

[19] R. at 154 (offered during the Appellant's unsworn statement without objection).

[20] Article 66(d)(1), UCMJ.

[21] R. at 27.

[22] Def. Ex. A.

[23] Def. Ex. B.

the Camp Lejeune base exchange—and, on at least one occasion, he sold the cocaine to a Marine junior to him in grade. We therefore find the military judge's sentence to be in-line with our own notions of justice in this case and not inappropriately severe.

**B. Appellant Waived his Claim that his Restriction was Tantamount to Confinement**.

*1. Standard of Review and the Law.*

We review de novo the ultimate legal question of whether certain pretrial restrictions are tantamount to confinement based on the totality of the conditions imposed.[24] Conditions of pretrial restriction that are more rigorous than necessary to ensure the presence of the accused at trial, or to prevent additional misconduct, may be tantamount to confinement and therefore entitle an appellant to day-for-day credit for the time that he spends in pretrial restriction.[25]

*2. Analysis*

The Supreme Court has established that waiver is the "intentional relinquishment or abandonment of a known right."[26] Whether an issue is waived is question of law we review de novo.[27] Here, the trial defense counsel mentioned *Mason* credit, but did not raise the issue in a motion, opting instead to raise the issue in Appellant's unsworn statement. We find that Appellant waived the issue of *Mason* credit at trial. Such waiver "leaves no error for us to correct on appeal."[28]

We therefore reject this AOE.

---

[24] *United States v. King* 58 M.J. 110, 113 (C.A.A.F. 2003).

[25] *United States v. Delaney*, No. 201700108, 2017 CCA LEXIS 650, at *5 (N-M Ct. Crim. App. Oct. 17, 2017).

[26] *United States v. Olano*, 507 U.S. 725. 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

[27] *United States v. Haynes*, 79 M.J. 17, 19 (C.A.A.F. 2019). We further note, even if there was no waiver of this issue, failure at trial to seek *Mason* credit for pretrial restriction tantamount to confinement will constitute forfeiture, rendering the issue ineligible for appellate relief in the absence of plain error. Based on our de novo review, we conclude that Appellant cannot meet his burden of establishing plain error. *See United States v. Parker*, 75 M.J. 603, 611 (N-M. Ct Crim. App. 2016).

[28] *See United States v. Campos*, 67 M.J. 330, 332-33 (C.A.A.F. 2009); *Haynes*, 79 M.J. at 19.

## C. Trial Defense Counsel were not Ineffective.

### 1. Standard of Review and the Law.

We review claims of ineffective assistance of counsel de novo.[29] The Sixth Amendment entitles criminal defendants to representation that does not fall "below an objective standard of reasonableness" in light of "prevailing professional norms."[30] In order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice.[31] With respect to the first prong, counsel are presumed to be competent and our inquiry into an attorney's representation is "highly deferential" to that attorney.[32] We employ "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[33] An appellant has the heavy burden of establishing a factual foundation for a claim of ineffective representation.[34] We will not second-guess strategic or tactical decisions made by the trial defense counsel unless the appellant can show specific defects in counsel's performance that were unreasonable under prevailing professional norms.[35]

In order to show prejudice under the second prong, an appellant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome"[36] "Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."[37]

---

[29] *United States v. Harpole*, 77 M.J. 231, 236 (C.A.A.F. 2018).

[30] *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

[31] *Strickland*, 466 U.S. at 687.

[32] *Id.* at 689.

[33] *Id.*

[34] *United States v. Grigoruk*, 52 M.J. 312, 315 (C.A.A.F. 2000).

[35] *United States v. Mazza*, 67 M.J. 470, 475 (C.A.A.F. 2009).

[36] *Strickland*, 466 U.S. at 694.

[37] *Id.* at 696.

*2. Analysis*

Appellant's ineffective assistance of counsel claim rests on the premise that trial defense counsel should have filed a motion for *Mason* credit. Where an appellant attacks the trial strategy or tactics of the trial defense counsel, the appellant must show specific defects in counsel's performance that were "unreasonable under prevailing professional norms."[38]

In the face of significant changes to the Uniform Code of Military Justice and Manual for Courts-Martial, it is sometimes difficult to identify "prevailing professional norms." What was common previously may be uncommon now, but we are reluctant, given the shifting sands of military justice, to make historic practice the standard for trial defense counsel. Rather, we must look at the reasonableness of the strategic decisions given the totality of the circumstances.

Despite the waiver of the *Mason* credit issue, the nature of Appellant's final AOE necessitates further analysis in the form of a de novo review of the underlying conditions of restriction.

The Court of Appeals for the Armed Forces [CAAF] has established that we consider "the prior examples of such cases . . . and the factors gleaned from them" in determining whether pretrial restriction is tantamount to confinement.[39] Factors to consider include:

> [T]he nature of the restraint (physical or moral), the area or scope of the restraint (confined to post, barracks, room, etc.), the types of duties, if any, performed during the restraint (routine military duties, fatigue duties, etc.), and the degree of privacy enjoyed within the area of restraint. Other important conditions which may significantly affect one or more of these factors are: whether the accused was required to sign in periodically with some supervising authority; whether a charge of quarters or other authority periodically checked to ensure the accused's presence; whether the accused was required to be under armed or unarmed escort; whether and to what degree [the] accused was allowed visitation and telephone privileges; what religious, medical, recreational, educational, or other support facilities were available for the accused's use; the location of the accused's sleeping accommodations; and whether the accused was allowed

---

[38] *United States v. Perez*, 64 M.J. 239, 243 (C.A.A.F. 2006).

[39] *United States v. Calderon*, 34 M.J. 501, 506 (A.F.C.M.R. 1991).

to retain and use his personal property (including his civilian clothing).[40]

Our consideration of the conditions of the restriction order in light of the factors the CAAF identified leads us to conclude that Appellant experienced restriction, not confinement. The nature of the restraint was primarily moral. Nothing in the record indicates that the period of restriction involved physical barriers (i.e., locked doors), personnel assigned to watch or monitor Appellant, or other controls that physically restrained Appellant.[41] Additionally, Appellant makes no claim that his privacy was ever interfered within the restriction area. Finally, while both the hours of visitation and who could visit Appellant were restricted, the record does not indicate that Appellant's communications were otherwise limited.

The physical boundaries of Appellant's restriction primarily included his two-person barracks room, the battalion headquarters for check-in, the barracks laundry room, and the smoking area. Additionally, Appellant could seek permission to attend church services, shop at the Base Exchange, perform physical training, and dine at the mess hall. Appellant does not claim—and the record provides no evidence to suggest—that any such requests were ever denied or limited.

Both the sign-in requirements[42] and the sign-in contingency[43] of the restriction order contemplate that Appellant would perform normal military duties while on restriction. While Appellant alleges that he "spent five months in my barracks room virtually 24/7" and "[he] spent nearly every hour of every day confined to [his] barracks room," Appellant makes no allegation that such isolation was mandated or forced.[44] While Appellant also claims he was told by his sergeant major and staff noncommissioned officer in charge that "they did

---

[40] *United States v. Smith*, 20 M.J. 528, 531-32 (C.M.A. 1985) (cited favorably in *United States v. Guerrero*, 28 M.J. 223, 225 (C.M.A. 1989)).

[41] Recognizing that an escort was required when Appellant went to the Base Exchange.

[42] Appellant's Mot. to Attach, App'x A, Para. D. We note however that the corresponding sign-in sheet has initials indicating only 11 days and one morning where the Appellant complied with the requirement and there is no evidence in the record to the contrary.

[43] Appellant Mot. to Attach, App'x A, para. K.

[44] Appellant Mot. to Attach, App'x B., at 3.

not want [him] around other [M]arines," there is nothing in the record indicating Appellant was given any such order.[45] Indeed while Appellant states, "I was required to adhere to all conditions in the restriction order," that notion is contradicted by Appellant's unsworn statement at trial.[46] In his statement, Appellant described being early to check-in,[47] discussing his case with members of his command,[48] and having internet access.[49] We therefore give more weight to the language contained in the restriction order: "If your section secures from work early…" in finding that Appellant's duties were not negatively affected by restriction.

Appellant was required per the restriction order to sign in with the OOD. However, despite the clearly written warning of potential legal consequences for failing to sign-in, the evidence attached by Appellant on appeal, and seemingly known to trial defense counsel, shows Appellant signed in on a total of 11 days (plus one 0700 muster).[50] There is no evidence of additional sign-ins or of punitive action taken against Appellant for failing to sign in for more than 140 other days claimed by Appellant in the AOE. We find this to be indicative of the nature of Appellant's restriction and a fact that weighs against Appellant's argument.

We recognize the written order required Appellant to be in uniform for most of the period in question, although the record again suggests strict compliance with this provision was not enforced.[51] We also consider that Appellant was prohibited from using his own vehicle and possessing or consuming alcohol. Further, we consider that Appellant's telephone and computer, including internet access,[52] use were not restricted, nor was his access to defense counsel. We note, too, that Appellant's case strategy prolonged the period of restriction prior to his guilty plea.[53]

---

[45] Appellant Mot. to Attach, App'x B., at 2.

[46] Appellant Mot. to Attach, App'x B., at 2.

[47] R. at 152

[48] R. at 153.

[49] *Id.*

[50] Appellant Mot. to Attach, App'x B., at 3.

[51] Trial defense counsel declaration dtd 26 July 2023.

[52] R. at 153.

[53] *Id.*

After conducting our analysis, we find Appellant's conditions were more akin to restriction than confinement.[54]

The CAAF has held "[a]n attorney's decision to forgo taking actions that likely would be futile is not deficient."[55] As we have found that the conditions on Appellant were more akin to restriction than to confinement, a *Mason* credit motion would likely have failed. The strategic and tactical decision made by trial defense counsel to have Appellant raise this issue in his unsworn statement was reasonable under the totality of Appellant's case and we decline to find that it constitutes deficient performance.

Additionally, the *Strickland* test requires a finding of prejudice. Appellant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[56] In this case that prejudice would have to be a "reasonable probability" that the factfinder's decision would have been different.[57] As discussed, based on the evidence available in the record as a whole, we are not convinced that there is a reasonable probability that the Military Judge would have awarded *Mason*

---

[54] *See King*, 58 M.J. at 111-12 (holding that restriction to dormitory, dining facility, squadron building, and defense counsel's office; reassignment to cleaning and manual labor duties; requirement to muster twice per day; and inability to use the gym was not tantamount to confinement); *United States v. Guerrero*, 28 M.J. 223, 224-25 (C.M.A. 1989) (holding that restriction to barracks room, latrine, chapel, mess hall and other places of duty; requirement for an NCO escort; and requirement to muster "every 30 minutes until normal 'lights out'" was not tantamount to confinement); *Parker*, 75 M.J. at 610-11 (holding that restriction to base with permission to visit exchange, gym, on-base food establishments, and other base facilities with an escort; requirement to muster every two hours during the day; prohibition against receiving visitors; and reassignment to routine administrative functions was not tantamount to confinement); *United States v. Patterson*, 201600189, 2017 CCA LEXIS 437, at *23-25 (N-M. Ct. Crim. App. 30 Jun 2017) (holding restriction to specific areas; strict muster requirements; requirement for an NCO escort when leaving the barracks; prohibition on the use of alcohol, recreational activity centers and on the operation of a privately owned vehicle; and prohibition against visitors was not tantamount to confinement); *Washington v. Greenwald*, 20 M.J. 699, 700 (A.C.M.R. 1985) (holding restriction to company area, dining hall, place of duty, and chaplain's office during the day and his room at night; requirement to muster every hour when not at work; and requirement for an escort to travel anywhere after duty hours was not tantamount to confinement).

[55] *United States v. Palacios Cueto,* 82 M.J. 323, 329 (C.A.A.F. 2022) (citing *Vieux v. Pepe*, 184 F.3d 59, 64 (1st Cir. 1999)).

[56] *Strickland*, 466 U.S. at 694.

[57] *Id.* at 695-96.

credit. Rather, as discussed *supra,* we are more convinced that the decision of the Defense not to file such a motion was based on all the available evidence, the lack of probability of success, and the strategic decision to use the information regarding restriction to influence the military judge's sentence to the benefit of Appellant.

Finally, as previously discussed, Appellant pleaded guilty to the charge and specifications. Appellant makes no claim that his plea would have been any different because his trial defense counsel did not raise a motion for *Mason* credit. As our analysis above should make clear, the wisdom of the reasonable tactical decision of the trial defense team is not one we either doubt or question. Appellant and his trial defense team made reasonable and successful strategic decisions that garnered a favorable sentence given the offenses, evidence, and totality of the circumstances. Appellant has failed to meet any of the requirements to prove his trial defense counsel were ineffective.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[58]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK. K JAMISON
Clerk of Court

---

[58] Articles 59 & 66, UCMJ.